**IOWA COMPREHENSIVE PETROLEUM UNDERGROUND STORAGE TANK FUND BOARD, Appellant,**

v.

**SHELL OIL COMPANY, Appellee.**

No. 99–618.

Supreme Court of Iowa.

Feb. 16, 2000.

Thomas J. Miller, Attorney General, David R. Sheridan and David S. Steward, Assistant Attorneys General, and John R. Perkins and John C. Conger of Pingel & Templer, P.C., West Des Moines, for appellant.

Timothy J. Walker, Gary A. Norton, Frank M. Grenard and Lisa A. Nelson of Whitfield & Eddy, Des Moines, for appellee.

CADY, Justice.

In this appeal we must determine whether our legislature intended proximate causation to be an element of recovery in an action for corrective costs against an owner or operator of an underground storage tank under the Iowa Comprehensive Petroleum Underground Storage Tank Fund Act, Iowa Code chapter 455G (1997) (Tank Fund Act). We conclude proximate cause is an element of recovery and affirm the judgment of the district court.

## I. Background Facts and Proceedings.

Shell Oil Company owned and operated a gasoline station on S.W. Ninth Street in Des Moines from 1945 to 1969. The station was equipped with an underground storage tank system, and Shell exclusively and directly supplied gasoline to the station for sale to customers. Shell sold the station in 1969, and the new owner continued to operate the station under the Shell trademark.

A petroleum contamination was discovered at the station in 1989. The contamination was reported to the Iowa Department of Natural Resources, and a claim was eventually made to the Iowa Comprehensive Petroleum Underground Storage Tank Fund Board for funds to clean the petroleum release. The Board approved the claim and corrective action was taken.

The Board then brought this action against Shell to recover the cost of the corrective action. Shell admitted the underground storage tank released petroleum, but asserted it was not responsible for the costs of the corrective action because the petroleum releases occurred at the site after Shell terminated its ownership, and any release of petroleum that may have occurred while it owned the station was no longer present at the time the corrective action was taken.

At trial, Shell offered evidence that any release of petroleum at the site during the time of its ownership had dissipated. Additionally, it offered evidence to show that petroleum leaked from the underground storage tank after it sold the station.

The district court instructed the jury on the elements of recovery which the Board was required to establish. One instruction told the jury the Board must prove Shell owned the underground storage tank system at the time a release of petroleum occurred from the system, and the release was a cause of the corrective action at the site. The district court rejected the Board's requested instruction that it must

only prove a release of petroleum occurred during the time Shell operated the site.

The jury found Shell owned the underground storage tank system while a release of petroleum occurred at the site, but found the release was not a cause of the corrective action taken. The district court entered judgment for Shell.

The Board appeals. It claims the district court erred by instructing the jury it was required to prove a release was a proximate cause of the corrective action. The Board claims it was only required to show a release occurred during the time Shell owned or operated the station.

## II. Scope of Review.

We review a challenge to jury instructions for errors of law. Iowa R.App. P. 4; *Sheets v. Ritt, Ritt & Ritt, Inc.*, 581 N.W.2d 602, 604 (Iowa 1998). Error in giving or refusing to give jury instructions does not warrant reversal without prejudice to the complaining party. *Thavenet v. Davis*, 589 N.W.2d 233, 236 (Iowa 1999). A material misstatement of the law constitutes prejudicial error. *See Waits v. United Fire & Cas. Co.*, 572 N.W.2d 565, 575 (Iowa 1997).

## III. Proximate Cause.

The Tank Fund Act authorized the Board to seek recovery for the costs of cleaning petroleum leaks from underground storage tanks from owners, operators, or other potentially responsible parties. Iowa Code § 455G.13(1); *Hagen v. Texaco Ref. & Mktg., Inc.*, 526 N.W.2d 531, 537 (Iowa 1995). These three entities are strictly liable for any release of petroleum which occurred during its involvement with the tank system. Iowa Code § 455G.13(7); *Hagen*, 526 N.W.2d at 537.

We have previously determined, in an action to recover costs against a potentially responsible party, that the Board must prove the activities of the potentially responsible party were a proximate cause of the release of petroleum for which the Board expended clean up funds. *Hagen*, 526 N.W.2d at 537. In doing so, we recognized proximate cause has traditionally been an accepted element of strict liability actions, and believed our legislature understood this when it established a strict liability standard for actions by the Board. *Id.* Nevertheless, the Board argues in this case that proximate cause is only an element of recovery under the Tank Fund Act when the action is brought by the Board against a potentially responsible party. It claims the legislature did not intend to include proximate cause as an element in an action brought against an owner or operator.

The source of the Board's position is section 455G.13(1). It provides, in relevant part:

> The board shall seek full recovery from the owner, operator, or other potentially responsible party liable for the released petroleum which is the subject of a corrective action, for which the fund expends moneys for corrective action....

Iowa Code § 455G.13(1). The Board acknowledges the phrase "liable for the released petroleum which is the subject of a corrective action" clearly expresses the proximate cause element of recovery, but claims the legislature expressly limited this element to actions for recovery of costs against potentially responsible parties under the doctrine of last preceding antecedent.

Our goal in interpreting statutes is to determine legislative intent. *State v. Wagner*, 596 N.W.2d 83, 87 (Iowa 1999). We determine the intent from what the legislature said, not from what it might or should have said. *See* Iowa R.App. P. 14(f)(13). If the language is clear and unambiguous, we apply a plain and rational meaning in light of the subject matter of the statute. *City of Waukee v. City Dev. Bd.*, 590 N.W.2d 712, 717 (Iowa 1999). However, if reasonable minds could disagree over the meaning of a word or

phrase of a statute, the statute is ambiguous and we resort to the rules of statutory construction. *Id.* When construing the statute, we read the language used, and give effect to every word. *State v. Osmundson,* 546 N.W.2d 907, 910 (Iowa 1996). We apply all relevant doctrines of construction in determining intent.

■■■■ Under the doctrine of last preceding antecedent, qualifying words and phrases refer only to the immediately preceding antecedent, unless a contrary legislative intent appears. *State of Iowa ex rel. Dep't of Transp. v. General Elec. Credit Corp.,* 448 N.W.2d 335, 345 (Iowa 1989) (citing 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.33, at 245 (4th ed. C. Sands 1972)). Evidence of a contrary legislative intent can arise when a comma separates the qualifying phrase from the antecedent. *See id.* In this circumstance, the qualifying phrase generally applies to all antecedents. *Id.*

Under the Tank Fund Act, the proximate cause phrase "liable for the released petroleum which is a subject of a corrective action" is not set off from the preceding phrase "other potentially responsible party" by a comma. Thus, under the doctrine of last preceding antecedent, this proximate cause language of the statute would apply only to "other potentially responsible party," and not "owner" or "operator."

■■■■ While we adhere to the doctrine of last preceding antecedent, we also recognize that punctuation is not always a highly persuasive factor in interpreting a statute, and will not defeat clear legislative intent. *State v. Lohr,* 266 N.W.2d 1, 4 (Iowa 1978). Furthermore, we avoid interpretations of a statute which will create an unjust result. *See Wesley Retirement Serv., Inc. v. Hansen Lind Meyer, Inc.,* 594 N.W.2d 22, 26 (Iowa 1999).

If the statute is interpreted under the doctrine of last preceding antecedent to limit the proximate cause language to "other potentially responsible party," then the remaining portion of the statute would be required to be read to impose liability on "owner" and "operator" based solely upon ownership or operation, without regard to whether any release of petroleum occurred during the period of ownership or operation. This is because the statute would then permit the Board to "seek full recovery from the owner, operator ... for which the fund expends moneys." We cannot believe the legislature intended to create liability based solely upon ownership or operation, nor does the Board argue that mere ownership or operation should establish liability.

■■■■ Other rules of construction are helpful in determining the intent of our legislature. Under the doctrine of *ejusdem generis,* general words which follow specific words are tied to the meaning and purpose of the specific words. *DeMore v. Dieters,* 334 N.W.2d 734, 738 (Iowa 1983); 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.17, at 188–89 (5th rev. ed.1992); *see Carpenter v. Policy Holders Life Ins. Ass'n,* 9 Cal.2d 167, 70 P.2d 487, 489 (1937) (under doctrine, use of word "other" refers to those in same general class as those specifically mentioned, absent clear intentions to the contrary); *John L. Roper Lumber Co. v. Lawson,* 195 N.C. 840, 143 S.E. 847, 849 (1928) (same); *Hastings v. City of Bremerton,* 159 Wash. 621, 294 P. 551, 553 (1930) (same); *Jansen v. State,* 60 Wis. 577, 19 N.W. 374, 375–76 (1884) (same); *see also People v. McCoy,* 29 Ill.App.3d 601, 332 N.E.2d 690, 695 (1975) ("other" indicates limitation of the general terms otherwise there would be no need for the inclusion of the specific).

In this case, the general phrase "other potentially responsible party" immediately follows the more specific words "owner" and "operator." Thus, even if the punctuation indicates the proximate cause language refers only to "other potentially responsible party," "owner" and "operator" are considered to be within the same general group of "potentially responsible party liable for the released petroleum which

is the subject of a corrective action" under the doctrine of *ejusdem generis*. Furthermore, the word "other" is used to modify "potentially responsible party." In following "owner, operator," it indicates a "potentially responsible party" includes an "owner" or "operator." *See Keenan v. Bowers,* 91 F.Supp. 771, 773 (E.D.S.C. 1950) (the word "other" following an enumeration of particular classes of things in a statute is read as meaning "other such like" and as including only words of like kind or character). Consequently, an "owner" or "operator," like a "potentially responsible party," must also be proximately liable for the released petroleum. Our legislature would not place owners and operators into the category of potentially responsible parties for the purpose of establishing liability under the Tank Fund Act, and then limit the accompanying proximate cause requirement to potentially responsible parties other than an "owner" or "operator."

Additionally, the phrase "for which the fund expends moneys for corrective action" relates to the "released petroleum" and does not modify "other potentially responsible party." *See* Iowa Code § 455G.13(1). Similarly, the phrase "which is the subject of a corrective action" modifies "released petroleum." *Id.* Thus, the proximate cause language stands on its own, and is not solely tied to the "potentially responsible party" language.

■ We also recognize that section 455G.13(1) was amended in 1991 to add the "other potentially responsible parties" as an additional class of persons against whom the Board could bring a cost recovery action. *See* 1991 Iowa Acts ch. 252, § 33. In interpreting the meaning of a revised statute, we may refer to the prior statute for the purpose of ascertaining the intent. *Collins v. Kenealy,* 492 N.W.2d 679, 682 (Iowa 1992). Prior to 1991, the statute provided, in relevant part:

> The board shall seek full recovery from the owner or operator of the tank which released the petroleum and which

is the subject of a corrective action, for which the fund expends moneys for corrective action or third-party liability....

Iowa Code § 455G.13(1) (1990). This statute clearly reveals that proximate cause was an element of recovery from an "owner" and "operator" and there is no indication that the legislature intended to remove the element by making another class of persons liable under the Tank Fund Act. Thus, in adding a general class of "potentially responsible parties" the legislature did not reduce the Board's burden of proof. To adopt the Board's interpretation would result in the inconsistent treatment of the parties from whom the Board is permitted to seek recovery.

Lastly, the Board argues that the purpose of the Tank Fund Act will be frustrated if proximate cause is imposed as an element for recovery against an owner or operator. It points out that the purpose of the Tank Fund Act mirrors the purpose of the federal Comprehensive Environmental Reponse, Compensation and Liability Act (CERCLA), 42 U.S.C. §§ 9601–9675 (1995), which has been interpreted to not require proof that the hazardous waste generated by a defendant caused the release of hazardous substance that resulted in remedial action. *See United States v. Alcan Aluminum Corp.,* 964 F.2d 252, 265 (3d Cir.1992).

We recognize our Tank Fund Act was intended to "protect and improve the quality of Iowa's environment by correcting existing petroleum underground storage tank releases" as well as to "provide adequate and reliable financial assurance for the cost of correcting actions for preexisting petroleum underground storage tank releases." 1989 Iowa Acts ch. 131, § 2; *see also Hagen,* 526 N.W.2d at 543. We also recognize our legislature understood the release of petroleum would be difficult to discover and it would be difficult to pinpoint all responsible parties. 1989 Iowa Acts ch. 131, § 1(3). Yet, the fund is financed by a variety of sources, not mere-

ly persons liable for petroleum releases. Iowa Code § 455G.8.

One approach to financing the remediation costs of environmental damage from the responsible person is to exclude causation as an element of recovery, especially when the nature of the problem makes it technologically difficult to trace the source to the responsible party. *See United States v. Monsanto Co.*, 858 F.2d 160, 170 (4th Cir.1988) (Congress knew of the technological infeasibility of tracing improperly disposed waste to its source and refused to frustrate the statutory goals by imposing a requirement that would be onerous to prove). However, it is not the only approach and we must look to the language used by our legislature to determine the approach adopted. A statute which imposes a proximate cause element is not inapposite to the purpose of the legislative goal of providing adequate and reliable financial assurance for the costs of corrective actions.

## IV. Conclusion.

We conclude that the trial court properly included proximate cause as an element to be proved by the Board in an action for costs under the Tank Fund Act. We affirm the district court.

**AFFIRMED.**

All justices concur except McGIVERIN, C.J. and LAVORATO, J., who take no part.