Bruce **HAMILTON**, Mary Hamilton, and Nolan Hamilton, Sean Hamilton, and Jaden Hamilton, Minors, by Their Next Friends, Bruce and Mary Hamilton, Plaintiffs,

v.

**WERNER CO., Defendant.**

Werner Co., Third–Party Plaintiff,

v.

Robert Hamilton, Rosa Lee Hamilton and Hamilton Hardware, Inc., Third–Party Defendants.

No. 4:01–CV–30528.

United States District Court, S.D. Iowa, Central Division.

June 6, 2003.

Robert A. Burnett, Jr., Des Moines, IA, for Plaintiffs.

J. Campbell Helton, Frank M. Grenard, Whitefield & Eddy PLC, Des Moines, IA, Michael J. Meyer, Tribler Orpett & Crone PC, Chicago, IL, for Defendant.

Mark A. Schultheis, Nyemaster Goode Voigts West Hansell & O'Brien PC, John Werner, Grefe & Sidney PLC, Des Moines, IA, for Third–Party Defendants.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WALTERS, Chief United States Magistrate Judge.

This matter is before the Court on defendant's motion for summary judgment (# 30), filed January 29, 2003. This is a products liability action. Plaintiffs (collectively referred to as "the Hamiltons") claim strict liability and negligence in the design of an aluminum extension ladder manufactured by defendant Werner Co. ("Werner"). The Court has diversity jurisdiction. 28 U.S.C. §§ 1332(a). The parties consented to proceed before a United States Magistrate Judge and the case was assigned to the undersigned on January 25, 2002. *See* 28 U.S.C. § 636(c).

In its motion Werner argues the Hamiltons' claims are barred by Iowa's statute of repose. Iowa Code § 614.1(2A). The Hamiltons have resisted. The matter is fully submitted following hearing.

## I. SUMMARY JUDGMENT STANDARD AND FACTUAL BACKGROUND

### A.

Werner is entitled to summary judgment if the affidavits, pleadings, and discovery materials "show that there is no genuine issue as to any material fact and that [it is] entitled to judgment as a matter

of law." Fed.R.Civ.P. 56(c). In considering the summary judgment record the Court is required to view the "facts and the reasonable inferences to be drawn from them in the light most favorable to the nonmoving party." *South Dakota Mining Assoc., Inc. v. Lawrence County,* 155 F.3d 1005, 1009 (8th Cir.1998). There are no genuine issues of material fact here bearing on the motion for summary judgment. The motion raises a question of statutory interpretation of Iowa's statute of repose. Under the interpretation argued for by Werner the Hamiltons are out of court. Under that proffered by the Hamiltons, the action proceeds.

### B.

Robert Hamilton, the father of plaintiff Bruce Hamilton, owned Hamilton's Tru–Value Hardware, Inc., a retail hardware store in Boone, Iowa. (Hamiltons App. at 1–2). The store received its inventory and merchandise from Cotter and Company ("Cotter"), which had a distribution center in Mankato, Minnesota. Hamilton's Tru–Value sold step ladders and extension ladders. Werner was the only brand of ladders it carried and all the ladders came from Cotter. (*Id.* at 2).

The code stamp on the ladder in question indicates it was manufactured by Werner in July 1981. Under Werner's normal business practices, the ladder would have left Werner's premises within 30 of the date of manufacture, on or before August 30, 1981. Werner believes Cotter was the initial purchaser of the ladder. (Hamiltons App. at 18).

Sometime before July 1989 Hamilton's Tru–Value purchased the ladder from Cotter for its inventory. (Hamiltons App. at 7). That summer Robert Hamilton decided to dissolve the store and liquidate the inventory. The store was closed on August 1, 1989 following a liquidation sale from mid-June to July 29. (*Id.* at 3). At about the time of the sale Robert Hamilton removed the ladder from inventory and took it to his home at 229 Cedar Street in Boone, Iowa for personal use. (*Id.* at 3). Prior to that time it had not been used. (*Id.* at 3–4).

Between 1989 and 1996 Robert Hamilton kept the Werner ladder at his home and used it occasionally. (Hamiltons App. at 4). In 1996, he sold his home at 229 Cedar to his son Bruce and moved to another residence at 1121—19th Street in Boone, Iowa. (*Id.*) There is a question in the record about whether Robert brought the ladder with him to the new house, or it stayed at the old one in the possession of Bruce and his wife Mary Hamilton. Mary Hamilton testified the ladder was at the 229 Cedar address when they moved in and remained until the time of the accident. (Werner App. at 2–3). Robert Hamilton testified he took the ladder with him and Bruce would borrow it when he needed it. (Hamiltons App. at 4). Bruce Hamilton testified the ladder belonged to his father and was kept at his new home. (*Id.* at 11). There is no dispute, however, that the ladder was stored outside for periods of time.

Bruce Hamilton testified that in the late fall of 2000 he borrowed the ladder from his father to put up Christmas lights. (Hamiltons App. at 12). It had been at his residence about a month when, on November 11, 2000 he set the ladder against the porch roof of his house, ascended it and climbed onto the porch roof without incident. After stringing Christmas lights on the roof, he began to descend the ladder. The Complaint alleges that after descending a couple of rungs, the top part or fly section of the ladder collapsed and telescoped, causing Bruce to fall to the ground, sustaining personal injuries. This lawsuit was filed on August 29, 2001.

## II. DISCUSSION

The parties agree Iowa law applies. In 1997 Iowa enacted a statute of repose for product liability claims which as relevant here provides:

> [Actions] founded on ... injuries to the person ... brought against the manufacturer, assembler, designer, supplier of specifications, seller, lessor or distributor of a product based upon an alleged defect in the design, inspection, testing, manufacturing, formulation, marketing, packaging, warning, labeling of the product, ... based on the theories of strict liability in tort, [or] negligence ... shall not be commenced more than fifteen years after the product was first purchased, leased, bailed, or installed for use or consumption unless expressly warranted for a longer period of time ....

Iowa Code § 614.1(2A)(a). It is undisputed the ladder in question was manufactured and placed in the stream of commerce in 1981. It remained in the possession of the distributor or retail seller and was not used until June or July 1989 when Robert Hamilton took it from the store for his own use. Werner argues the phrase "for use or consumption" unambiguously modifies only the word "installed" with the result that the repose period began to run on approximately August 30, 1981 when the ladder was "first purchased" by the distributor, Cotter, more than fifteen years before this action commenced. The Hamiltons respond that the phrase "for use or consumption" unambiguously modifies all of the series of triggering events described—"purchased, leased, bailed, or installed." None of these events occurred "for use or consumption" of the ladder until, at the earliest, June or July 1989 when Robert Hamilton took the ladder home, less than fifteen years before this action commenced.

No Iowa cases are on point. Both sides identify dicta in a recent Iowa Supreme Court opinion dealing with whether the repose period is extended by a statute giving minors one year after they reach majority to commence an otherwise time-barred action as giving some support for their arguments. The court first described the statute as generally requiring "that any products liability claim be brought within fifteen years of the product's initial purchase," but later said "the period established in § 614.1(2A)(a) does not run from the accrual of the plaintiff's claim; rather it runs from the date the product was first purchased or installed for use." *Albrecht v. General Motors Corp.*, 648 N.W.2d 87, 89, 92 (Iowa 2002). This dicta generally describing when the repose period begins does not offer much guidance as to how the Iowa Supreme Court would resolve the issue presented here.

In arguing the language of the statute unambiguously favors its interpretation, Werner relies on grammar and punctuation used by the legislature. It contends that absent a comma between the words "installed" and "for" the phrase "installed for use or consumption" is an independent clause with "for use or consumption" modifying only the word "installed." An independent clause is one that contains a subject and a predicate and makes sense standing alone, that is, it expresses a complete thought. Kenneth G. Wilson, *The Columbia Guide to Standard American English* at 243 (Columbia University Press 1993). An example of a sentence with two independent clauses would be: "Bruce Hamilton climbed a ladder, and he fell to the ground." In contrast, "installed for use or consumption" does not contain a subject and does not make sense on its own. It is not an independent clause.

"[F]or use or consumption" is a qualifying phrase. The grammatical question is whether to apply the " 'doctrine of the last antecedent,' " where " 'qualifying words, phrases, and clauses are to be applied to the words or phrase immediately preceding, and are not to be construed as extending to and including others more remote.' " *Elliot Coal Min. v. Dir., Office of Workers Comp.*, 17 F.3d 616, 629 (3d Cir.1994)(quoting *Azure v. Morton*, 514 F.2d 897, 900 (9th Cir.1975)); *see Iowa Comprehensive Petroleum Fund Board v. Shell Oil Co.*, 606 N.W.2d 376, 380 (Iowa 2000). Comparison of the opinions in *Elliot Coal* and *Shell Oil* illustrates that identifying the last antecedent in statutes similar to the one at issue here may be a source of disagreement.

In *Elliot Coal* the court held that the presence of a comma before the conjunction "or" preceding the last limiting clause in a black lung statute indicated the doctrine of the last antecedent did not apply with the result the clause pertained to the entire series of words immediately preceding. 17 F.3d at 629–30. The analysis in *Elliot Coal* would apply the phrase "for use or consumption" to the entire series of triggering events in the repose statute which also places a comma before the conjunction "or" preceding the limiting clause. On the other hand, the Iowa Supreme Court's analysis in *Shell Oil* is more consistent with Werner's grammatical argument. That analysis would view the last antecedent as the word "installed" with the absence of a comma between that word and the qualifying phrase "for use or consumption," indicating the doctrine of the last antecedent should apply. 606 N.W.2d at 380 (citing *State of Iowa ex rel Dep't of Transp. v. General Electric Credit Corp.*, 448 N.W.2d 335, 345 (Iowa 1989)).

Syntax, rules of grammar and punctuation are merely guides and here, as ultimately proved the case in *Shell Oil*, are not "a highly persuasive factor in interpreting a statute, and will not defeat clear legislative intent." 606 N.W.2d at 380; *see* 2A Norman J. Singer, *Statutes and Statutory Construction* § 47:33 at 371–72 (2000 rev. ed.). The Court believes the legislative intent is clear when the statute is considered as a whole and with reference to its object.

The words "after the product was first purchased, leased, bailed, or installed for use or consumption" describe the events which trigger the running of the repose period. The events are preceded by the temporal modifier "first" and followed by the purpose modifier "for use or consumption." The use of these modifiers as bookends for transactions or events by which a product is typically acquired by a user or consumer clearly indicates both modifiers are intended to apply to the entire series. The evident purpose of the serial description of triggering events is to be as inclusive as possible, not to afford a basis to differentiate between them, just as the wide-ranging lists of protected persons and defects covered are intended.

Even if the language employed to describe the commencement of the repose period was viewed as ambiguous, construing "for use or consumption" as applying to the entire series of triggering events is the most "reasonable construction that ... effectuate[s] the statute's purpose," *Albrecht*, 648 N.W.2d at 90, a "plain and rational meaning." *Shell Oil*, 606 N.W.2d at 379. It is a cardinal rule of statutory interpretation that "[e]ach term is to be given effect." *Miller v. Marshall County*, 641 N.W.2d 742, 749 (Iowa 2002)(citing 2A Singer, *Sutherland Statutory Construction* § 46.06 at 186, 190–92 (6th ed.2000)); *see TLC Home Health Care LLC v. Iowa Dep't of Human Services*, 638 N.W.2d 708, 713 (Iowa 2002); *State v. Keene*, 629 N.W.2d 360, 364 (Iowa 2001). A statute

will not be construed to make any part of it superfluous, unless no other construction is reasonably possible. *In Interest of G.J.A.*, 547 N.W.2d 3, 6 (Iowa 1996); *see First State Bank v. Clark*, 635 N.W.2d 29, 32 (Iowa 2001); *State v. Schweitzer*, 646 N.W.2d 117, 120 (Iowa App.2002). Commencement of the repose period from a product's first purchase to anyone for anything as Werner argues would start the period running from the date of sale by the manufacturer to the first intermediary in the distribution chain. (*See* Werner Reply Brief at 4). Commencement of the period from the product's installation for use or consumption would start the period running from the date the product is placed in service available to the user or consumer. Conceptually, these commencement dates are at opposite ends of the spectrum, a fact which alone indicates it is unlikely the legislature intended to incorporate both. It is difficult to conceive of a product installed for use or consumption which would not earlier have been purchased, or for that matter, bailed. Werner's interpretation renders the phrase "for use or consumption" superfluous as a practical matter, a result which can be avoided by construing these words to modify all of the triggering events. Such a construction is the more reasonable one because it provides a uniform standard for when the repose period commences. Indeed, one is hard put to articulate a rationale for applying a different standard applicable only to "installed" products.

 Moreover, in resolving ambiguities in a statute, a court must consider "the objects sought to be accomplished [and] the evils sought to be remedied." *Albrecht*, 648 N.W.2d at 90. A statute of repose is intended to protect against stale claims, but also has as an object fixing a point in time when a potential defendant becomes immune from liability. *Id.* at 91 (quoting 51 Am.Jur.2d *Limitation of Actions* § 18, at 463); *see* Iowa Code

§ 4.6(1). A uniform standard for determining when the repose period begins is most consonant with this object. *See Border v. Indian Head Indus., Inc.*, 101 Or. App. 556, 559, 792 P.2d 111, 112 (Or.App. 1990).

 Legislative history may be looked to in determining the legislative purpose of an ambiguous statutory provision. *Mason v. Schweizer Aircraft Corp.*, 653 N.W.2d 543, 548 (Iowa 2002). Werner asserts a proposed version of § 614.1(2A)(a) which did not become law supports its construction of the statute which was enacted. House File 693 became the statute of repose. 1997 Iowa Acts ch. 197 § 5. An earlier version of that bill would have defined the repose period according to the "product's useful safe life." (Werner App. at 6). The fact-finder would have had to determine if the harm was caused after the product's useful safe life, beginning at the "time of delivery of the product" and extending "for the time during which the product would normally be likely to perform or be stored in a safe manner." The statute incorporated a presumption, rebuttable by clear and convincing evidence, that if the harm occurred more than twelve years after the delivery of a product, the useful safe life had expired. Thus, this version would not have had a fixed or absolute repose period, but rather a presumptive period which could be extended if it was proved the product would normally be likely to perform for a longer period or be safely stored.

Werner argues the extension of the repose period to fifteen years and elimination of reference to "time of delivery" as the commencement of the period in the final version codified in § 614.1(2A)(a) reflects a trade-off of a longer repose period for an earlier start date. That, however, is speculation. It is just as likely, more so in the Court's estimation, that the final ver-

sion reflects the longer, definite repose period was a trade-off for elimination of the shorter, but merely presumptive period. The substitution of the "for use or consumption" language for "time of delivery" was intended to clarify the starting point of the repose period as the point at which the product is effectively acquired by the first user or consumer as some courts had held applying similar "for use or consumption" provisions. *See Fritchie v. Alumax, Inc.,* 931 F.Supp. 662, 674 (D.Neb.1996); *Pafford v. Biomet,* 264 Ga. 540, 541–42, 448 S.E.2d 347, 348–49 (Ga. 1994); *Border,* 101 Or.App. at 559, 792 P.2d at 112; Am. Law Prod. Liab.3d § 47:66 at 102 & n. 31. But in the final analysis, the earlier version of House File 693 is so different from the version which ultimately became law that it cannot reliably be considered to say anything about legislative intent. In fact, as is often the case with Iowa statutes, no relevant legislative history has been identified.

### III.

For the foregoing reasons this Court concludes the Iowa Supreme Court would interpret Iowa Code § 614.1(2A)(a) to commence the running of the statute of repose in this case no earlier than in June or July 1989 when the ladder was taken out of the hardware store's inventory by Robert Hamilton for his personal use. It follows Werner's motion for summary judgment should be denied.

IT IS SO ORDERED.