**STATE of Iowa, Appellant,**

v.

**Kenneth Mark NELSON, Appellee.**

No. 85–1590.

Supreme Court of Iowa.

Oct. 15, 1986.

Thomas J. Miller, Atty. Gen., Ann Brenden, Asst. Atty. Gen., James W. Herrig, Co. Atty., and Michael J. Whalen, Asst. Co. Atty., for appellant.

Steven J. Hodge of Kaufman, Lange, Hodge & Neuhaus, Dubuque, for appellee.

Considered by REYNOLDSON, C.J., and LARSON, SCHULTZ, WOLLE and NEUMAN, JJ.

SCHULTZ, Justice.

We granted the State's application for discretionary review of the trial court's order suppressing evidence of a blood alcohol test. Kenneth Mark Nelson was charged with the crime of operating a vehicle while intoxicated or drugged in violation of Iowa Code section 321.281(1)(a), (b) (1985). In preparing to administer a test pursuant to the implied consent provisions of Iowa Code section 321B.4, the officer initially determined that Nelson should give a breath sample for testing, but later requested that he submit to a blood sample. In his motion to suppress, Nelson maintains that section 321B.4 only permits an officer to request one bodily specimen, and that the request for a blood specimen is a violation of his constitutional right to be free from unreasonable searches and seizures. Stating it relied upon both the statutory and the constitutional grounds presented by Nelson and without stating any reason for its ruling, the trial court sustained defendant's motion to suppress the test. We reverse.

Following his arrest for OWI, Nelson was taken to the Dubuque Law Enforcement Center, where he consented to a breath test and signed a consent form. The officer supervising the test checked the intoxilizer prior to administering the test; the check showed the machine to be working properly. Nelson made two or three attempts to give a breath sample. The machine registered no reading. Upon further checking, the officers found that a necessary tube had become detached from the machine, thus causing a malfunction. Because they could not get the machine repaired within the two-hour period following his arrest during which a test must be administered under the statute, the officers requested that the defendant submit a blood specimen for testing. Nelson agreed to the blood test, and initialed the change on his previously-signed consent form. The results of the blood test indicated a blood alcohol concentration of .142. The OWI section provides that "an alcohol concentration of .10 or more is presumptive evidence that the defendant was under the influence of an alcoholic beverage." Iowa Code § 321.281(8).

I. Initially, we examine statutory grounds for the exclusion of the test results. The facts are uncontroverted and the fighting issue is whether an interpretation of section 321B.4 will allow the peace

officer to request a second test under the present circumstances.

Our review is at law. When the issue on appeal arises from a ruling on the suppression of a chemical test required by section 321B.4, and does not present issues of fact but rather of statutory interpretation and application, we are not bound by the trial court's determinations of law. *See State v. Stoneking*, 379 N.W.2d 352, 354 (Iowa 1985) (citing *State v. Davis*, 271 N.W.2d 693, 695 (Iowa 1978)).

Section 321B.4 provides in pertinent part:

1. Any person who operates a motor vehicle in this state under circumstances which give reasonable grounds to believe that the person has been operating a motor vehicle in violation of section 321.-281 is deemed to have given consent to the withdrawal of specimens of the person's blood, breath, or urine and to a chemical test or tests of the specimens for the purpose of determining the alcohol concentration or presence of drugs, subject to this section. The withdrawal of the body substances and the test or tests shall be administered at the written request of a peace officer having reasonable grounds to believe that the person was operating a motor vehicle in violation of section 321.281, and if any of the following conditions exist:

*a.* A peace officer has lawfully placed the person under arrest for violation of section 321.281.

. . . .

2. The peace officer shall determine which of the four substances, breath, blood, saliva, or urine, shall be tested. Refusal to submit to a chemical test of urine, saliva or breath is deemed a refusal to submit, and section 321B.13 applies. A refusal to submit to a chemical test of blood is not deemed a refusal to submit, but in that case, the peace officer shall then determine which one of the other three substances shall be tested and shall offer the test. If the peace officer fails to provide a test within two hours after the preliminary screening test is administered or refused or the arrest is made,

whichever occurs first, a test is not required, and there shall be no revocation under section 321B.13.

Nelson argues that the literal language of the statute, which lists in the disjunctive in subsection (1) the tests that may be performed, does not permit the officer to request more than one type of bodily specimen from a suspect arrested for OWI. He urges that subsection (2), which says the officer shall decide "which *one* of the other three substances shall be tested and shall offer the test," if a blood sample is requested and refused, further supports this argument. (Emphasis added.) In addition, Nelson cites language from *State v. Schlemme*, 301 N.W.2d 721 (Iowa 1981), in which we stated that among the procedural requirements of section 321B.3 and 321B.4 are "that the peace officers select a particular test to be performed—breath, blood, saliva, or urine. . . ." *Id.* at 723. The brief does not explicitly state the inference to be drawn from the court's labeling this "procedural requirement," but presumably the implication is that the evidence cannot be used against the defendant unless the officer has met all procedural requirements prescribed by the statute. *See State v. Shelton*, 176 N.W.2d 159, 160 (Iowa 1970). We do not believe the statutory language compels this result, nor do we agree that the selection of one particular test is a procedural requirement within the meaning of *Shelton*.

Statutory construction is properly invoked when a statute is so unclear that reasonable minds may disagree or be uncertain as to its meaning. *Schlemme*, 301 N.W.2d at 723. The implied consent provision contains no specific statement concerning the number of tests that a peace officer may require. At best, the statutory language is ambiguous on this question. Consequently, we must interpret the statute to determine the legislative intent. We may consider the language used and the purposes for which the legislation was enacted. *Id.*

The legislature, in enacting chapter 321B, indicated the general purpose of the

chapter was "to control alcoholic beverages and aid the enforcement of laws prohibiting operation of a motor vehicle while under the influence of an alcoholic beverage." Iowa Code § 321B.1. Further, we have indicated that the purpose of the procedural requirements in this section "is to protect the health of the person submitting to the test and to guarantee the accuracy of the test for use in judicial proceedings." *Schlemme*, 301 N.W.2d at 723 (citing *State v. Wallin*, 195 N.W.2d 95, 97 (Iowa 1972)).

The legislative purpose would not be served by a ruling that a second type of bodily specimen could not be requested when an equipment failure negated the results of the first attempted test. While we do believe the statutory requirements must be followed precisely, we should not allow an overly technical interpretation of an ambiguous statutory provision to undermine the purpose of the statute. We believe a proper interpretation of chapter 321B would allow the peace officer to request a second type of test when the first test could not be completed due to an equipment failure. There is no claim that a second test was inaccurate or that Nelson's health was endangered by it. A request for a second test under these circumstances would be consistent with the purpose of the implied consent provision.

Additionally, we do not believe that our holding in *Schlemme* aids Nelson. Although the language in *Schlemme* seems to support Nelson's contentions, the holding of the case cuts the other way. The defendant in *Schlemme* was arrested by one officer, but was "processed" under the implied consent statute by another. *Id.* at 722. While a literal interpretation of the statute would have required the second officer to re-arrest the defendant, we held that such a requirement would be contrary to the legislative intent. Because the defendant's rights were unaffected by the failure to re-arrest, we affirmed the conviction. *Id.* at 724. Likewise, while the express language of section 321B.4 does not authorize an officer to first request a breath test and then request a blood test, the purpose of the statute is fostered rather than thwarted by approval of the officer's request for a second test under these circumstances.

In a recent Minnesota case, which involved the revocation of a license for failure to submit to a blood or urine test, but otherwise had facts nearly identical to those in our case, the court held that a driver is obligated to submit to an additional test when the breathalyzer machine malfunctions. *Gunderson v. Commissioner of Public Safety*, 351 N.W.2d 6 (Minn. 1984). In that case, the defendant refused, on advice from his attorney, to submit to a blood or urine test, after an attempt to perform a breath test failed due to an equipment malfunction. The court held that the driver was obligated to submit to an additional test, even though the language of the Minnesota implied consent law includes only references to a "test," in the singular, throughout the statute. *Id.* at 7, Minn.Stat. § 169.123 (1980).

We recognize that *Gunderson* involved the civil application of their implied consent law and that our action relates to an OWI conviction, in which case the rule of strict construction must be applied. *See State v. Kirklin*, 357 N.W.2d 310, 313 (Iowa 1984). This rule is limited, however, and we do not apply strict construction to inject doubt when legislative intent is evident through a reasonable construction of the statute. *Id.* We believe that it is a reasonable construction of section 321B.4 to allow a peace officer to make a second request of a suspect for a different body specimen, when the first test attempt is thwarted by an equipment malfunction.

II. Nelson also raises a fourth amendment claim in his motion to suppress the evidence. U.S. Const. amend. IV. The State urges that the results of the blood sample were admissible in evidence because the sample was taken in compliance with chapter 321B. In his appellate brief Nelson merely states that his subsequent consent to a blood test was not voluntarily and knowingly given, and therefore the second test was done in violation of his fourth amendment right to be free from unreasonable searches and seizures. He cites no authority for this proposition.

Nelson's contention fails for two reasons. First, he claimed in his motion to suppress that the insistence upon ·the extraction of the blood specimen violated his fourth amendment right, but did not raise the issue of voluntariness before the trial court. Contentions not raised before the trial court cannot be raised for the first time on appeal. *State v. Hamilton*, 309 N.W.2d 471, 476 (Iowa 1981). Second, in our de novo review of this issue we find no evidence in the record to support a claim that the blood test was not voluntarily and knowingly given. Defendant signed a written consent form and initialed the form where the request for a specimen was changed from breath to blood. Furthermore, we have held that the implied consent section withstands a constitutional challenge. Advising the suspect that a refusal to submit to the test will result in a loss of license is not a threat or an inducement that would make the test inadmissible as involuntary. *See State v. Johnson*, 257 Iowa 1052, 1062, 135 N.W.2d 518, 525 (1965).

We conclude that the trial court erred as a matter of law in suppressing the blood test. The order suppressing the test is reversed and the matter is remanded for further proceedings.

REVERSED AND REMANDED.