William Eugene LUDTKE, Appellee,

v.

**IOWA DEPARTMENT OF TRANS-
PORTATION, MOTOR VEHI-
CLE DIVISION, Appellant.**

No. 00–1805.

Supreme Court of Iowa.

May 8, 2002.

Rehearing Denied July 1, 2002.

Thomas J. Miller, Attorney General, David A. Ferree, Special Assistant Attroney General, and Mark Hunacek, Assistant Attorney General, for appellant.

John O. Moeller, Davenport, for appellee.

LAVORATO, Chief Justice.

The Iowa Department of Transportation (IDOT) appeals from a district court ruling on judicial review reversing an IDOT or-

der revoking the driver's license of William Eugene Ludtke. The sole issue on appeal is whether under the circumstances the arresting officer could lawfully request a second breath test sample. The IDOT held he could, but the district court reversed. Because we disagree with the district court's ruling, we reverse and remand with directions.

## I. Background Facts and Proceedings.

On January 27, 2000, Iowa state trooper Robert Turpin observed Ludtke driving erratically and stopped him. Suspecting that Ludtke was under the influence of alcohol, Turpin proceeded to administer a series of field sobriety tests. A preliminary breath test (PBT) resulted in a .13 reading. Turpin arrested Ludtke for violation of Iowa Code section 321J.2 (1999) (operating a vehicle with an alcohol concentration of .10 or more) and transported him to a law enforcement center. At the station, the trooper invoked the implied consent law, *see* Iowa Code section 321J.6, and proceeded to administer a breath test using the Model 4011A Intoxilyzer.

The trooper had been certified to use the intoxilyzer for approximately four years. He had performed the test "at least" dozens of times.

The intoxilyzer gauges both the pressure and volume of air a subject blows into the machine. It records the alcohol content of deep lung air and purges the sample into the atmosphere at the completion of a three-stage testing cycle. The intoxilyzer performs a calculation based on a fixed ratio of alcohol in lung air to alcohol in the blood and reports the result as a blood alcohol reading. *See State v. Steadman*, 350 N.W.2d 172, 173 (Iowa 1984).

The intoxilyzer's green light indicates when there is sufficient pressure into the machine. If the green light turns off, indicating insufficient pressure, the test aborts and the device does not produce a hardcopy printout. Thus, the machine will not produce a hardcopy printout until the test is complete.

According to the trooper's testimony, sometimes a subject puffs lightly into the machine for ten seconds, and the machine locks in and accepts that as a satisfactory test. The operator of the machine has no control over the machine once a test begins as to what sample it takes. The operational checklist indicates the operator should instruct a subject "to blow into [the] mouthpiece for as long as possible." The checklist does not leave a blank space for the officer to record the length of time a subject blows into the machine.

The trooper prepared an operational checklist and followed the procedures necessary to obtain a valid reading from the machine. The first test the trooper administered showed a result of .083 breath alcohol concentration. The machine printed out a hardcopy of the results. According to the trooper, the machine worked properly for the first test and gave him no indication that the test was a failure.

The trooper testified that Ludtke only blew in the intoxilyzer for seven or eight seconds on the first test. For this test, the trooper counted out loud to determine the length of time Ludtke blew into the machine. Because Ludtke blew "for at least ten seconds" for the PBT the trooper administered in the field, the trooper knew Ludtke could blow longer. According to the trooper, Ludtke took the tube out of his mouth before he was through blowing as long and hard as he could. For this reason, the trooper did not consider the first test to be a proper valid breath test, and administered a second test using the intoxilyzer. On the second try, the trooper again prepared an operational checklist. Ludtke blew for twenty seconds on the

second test. The test resulted in a .120 reading. The trooper considered the second test a valid test and the more accurate of the two tests. The trooper attributed the difference in results of the two tests to the fact that "the second test was the result of deep lung air . . . which is more accurate[,] and the test result of the first one was not."

The trooper further testified that the intoxilyzer worked properly that day for both tests and that he operated it properly for both tests.

Ludtke did not testify, but he did submit an affidavit after the hearing, in which he stated that when he blew into the intoxilyzer the first time, the trooper took the hose away from him after the machine registered a satisfactory test. Ludtke also stated in the affidavit that he did not stop blowing by his own decision. The IDOT did not object to the admission of the affidavit, and the administrative law judge (ALJ), who heard the case, admitted it into evidence.

The ALJ filed a proposed decision in which he found that the first test was a valid one because no error was indicated and Ludtke "blew enough breath to lock-in a printed reading on the evidence card." Therefore, the ALJ concluded, Ludtke met his burden of proving that he complied with the implied consent law and that the peace officer did not satisfy the procedural requirements of that law. The ALJ rescinded the revocation of Ludtke's driver's license.

The IDOT appealed. The reviewing officer reversed, finding there was no statutory, administrative, or case law that prohibits a peace officer from requesting a second bodily specimen for testing. Here, the trooper believed Ludtke had not provided the proper specimen for the first test. Therefore, the reviewing officer concluded, "[t]o not allow a second breath test when a peace officer believes an arrestee has not provided a proper breath specimen would encourage an arrestee to thwart the test result by not following the instructions and provid[ing] only a partial breath specimen." The reviewing officer then reinstated the revocation of Ludtke's driver's license.

Ludtke petitioned for judicial review in the district court. The district court concluded Iowa Code chapter 321J provided no authority for the second test. The court further found that Ludtke met his burden of proof by showing the first test was a valid one under the statute and accompanying administrative rules. The court reversed the IDOT's ruling and rescinded the revocation of Ludtke's driver's license. It is from this ruling that the IDOT appeals.

## II. Issue.

The issue is whether under the circumstances the trooper could lawfully request a second breath test sample.

## III. Scope of Review.

Iowa Code chapter 17A governs review of license revocation decisions under Iowa Code chapter 321J. *See* Iowa Code § 321J.14; *Reed v. Iowa Dep't of Transp.*, 478 N.W.2d 844, 845–46 (Iowa 1991). The district court acts in an appellate capacity to correct errors of law on the part of an agency when the court exercises its power of judicial review under Iowa Code section 17A.19(8). *Heartland Express, Inc. v. Terry*, 631 N.W.2d 260, 265 (Iowa 2001). The court may affirm the agency action or remand to the agency for further proceedings. Iowa Code § 17A.19(8). The court shall reverse, modify, or grant any other appropriate relief from the agency action if substantial rights of the petitioner have been prejudiced because of such action. *Id.*

In reviewing the district court's decision, we apply the standards of section 17A.19(8) to the agency action to determine whether our conclusions are the same as those of the district court. *Heartland Express*, 631 N.W.2d at 265. If they are, we affirm; otherwise, we reverse. *Id.* An agency's factual findings are binding on appeal if supported by "substantial evidence in the record made before the agency when the record is viewed as a whole." Iowa Code § 17A.19(8)(f); *accord Reed*, 478 N.W.2d at 846. Evidence is substantial when a reasonable person could accept it as adequate to reach the same findings. *Reed*, 478 N.W.2d at 846. Conversely, evidence is not insubstantial merely because it would have supported contrary inferences, or because two inconsistent conclusions could be drawn from it. *Id.* Therefore "[t]he ultimate question is not whether the evidence supports a different finding but whether the evidence supports the findings actually made" by the agency. *Id.*

 "In short, the findings of an agency are binding on appeal unless a contrary result is demanded as a matter of law. This limited scope of factual review is warranted by the presumably greater expertise an agency has over matters within its purview." *CMC Real Estate Corp. v. Iowa Dep't of Transp.*, 475 N.W.2d 166, 174 (Iowa 1991) (citation omitted).

### IV. Applicable Law.

Iowa's implied consent statute provides in relevant part:

A person who operates a motor vehicle in this state under circumstances which give reasonable grounds to believe that the person has been operating a motor vehicle in violation of section 321J.2 [operating while under the influence of alcohol or a drug or while having an alcohol concentration of .10 or more (OWI)] ... is deemed to have given consent to the withdrawal of *specimens* of the person's blood, breath, or urine and to a chemical *test* or *tests* of the specimens for the purpose of determining the alcohol concentration or presence of a controlled substance or other drugs, subject to this section. The withdrawal of the body substances and the *test or tests* shall be administered at the written request of a peace officer having reasonable grounds to believe that the person was operating a motor vehicle in violation of section 321J.2 ... and if any of the following conditions exist:

 a. A peace officer has lawfully placed the person under arrest for violation of section 321J.2.

 . . . .

Iowa Code § 321J.6(1) (emphasis added).

The peace officer determines which of the three substances—breath, blood, or urine—shall be tested. Iowa Code § 321J.6(2). If the officer has "reasonable grounds to believe that the person was under the influence of a controlled substance, a drug other than alcohol, or a combination of alcohol and another drug, a blood or urine test shall be required even after another type of test has been administered." Iowa Code § 321J.6(3).

One of the consequences of OWI is revocation of one's driver's license. *See* Iowa Code § 321J.4(1). The same consequence flows from an unlawful refusal to submit to one of the three proscribed tests. *See* Iowa Code § 321J.9.

 The general purpose of chapter 321J "is to reduce the holocaust on our highways part of which is due to the driver who imbibes too freely of intoxicating liquor." *State v. Palmer*, 554 N.W.2d 859, 860 (Iowa 1996) (citation omitted). The statutory restrictions on the applicability of the implied consent law serve three purposes: (1) to protect the health of the

person submitting to the statutory tests— breath, blood, or urine; (2) to guarantee the accuracy of the test for use in judicial proceedings; and (3) to protect citizens from indiscriminate testing or harassment. *Id.* at 861. "These purposes are consistent with a sensitivity to the fact such tests invade the bodily integrity of citizens without the protection of a search warrant." *Id.* Because of that sensitivity, the legislature has placed limitations on the circumstances under which section 321J.6 applies. *Id.* Only when the requirements of section 321J.6 have been met may the State make a suspected drunk driver choose between chemical testing for the presence of alcohol or the loss of the person's driver's license. *Id.*

In *Palmer*, we quoted with approval this admonition from *Schmerber v. California*, the case in which the United States Supreme Court first validated the withdrawal of blood from a suspected drunk driver absent a search warrant:

> We thus conclude that the present record shows no violation of petitioner's right under the Fourth and Fourteenth Amendments to be free of unreasonable searches and seizures. It bears repeating, however, that we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States minor intrusions into an individual's body *under stringently limited conditions* in no way indicates that it permits more substantial intrusions, or intrusions under other conditions.

*Palmer*, 554 N.W.2d at 862 (quoting *Schmerber*, 384 U.S. 757, 772, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908, 920 (1966) (emphasis added)).

## V. The Parties' Contentions.

**A. The IDOT.** The IDOT contends that the applicable statutes do not require an officer to stop after one test of alcohol concentration. According to the IDOT, an arresting officer may require a licensee to provide what the officer reasonably believes to be a "viable" sample, notwithstanding the fact that the intoxilyzer displays a green light, which would otherwise signify a valid test.

In addition, the IDOT contends substantial record evidence supports the conclusion that Ludtke refused to cooperate, which is equivalent to a refusal. *See Buda v. Fulton*, 261 Iowa 981, 991, 157 N.W.2d 336, 342 (1968) (failure to cooperate tantamount to refusal). The IDOT argues that if an officer can revoke a noncooperating licensee's driver's license for refusing to submit to a chemical test, *see* Iowa Code section 321J.9, "then surely that officer would be justified in taking the more generous approach of giving the licensee a second chance at compliance."

The IDOT points to the following evidence to support its conclusion that Ludtke refused to cooperate. First, the trooper testified Ludtke failed to follow instructions to blow as long as possible. Second, Ludtke did not deny these allegations at the hearing through testimony, rather he gave an affidavit *after* he was no longer subject to cross-examination. This is not the kind of evidence sufficiently compelling to defeat the officer's testimony. Last, the disparity in test results corroborates the officer's testimony. Because nothing in the record indicates the machine was malfunctioning, "the only logical conclusion is that the giving of an adequate sample resulted in a more accurate test measurement."

Finally, the IDOT contends the district court's conclusion that the first test result would have been admissible in trial be-

cause it met the terms of Iowa Code section 321J.15 (test admissible if performed by certified operator using device intended to determine alcohol concentration and methods approved by the commissioner of public safety), "misses the point." In support of its contention, the IDOT argues that any presumption that the first test results were reliable "has been clearly rebutted when a second test, conducted moments later on the same machine, using a better breath specimen, reveals a [breath] alcohol concentration approximately fifty percent higher."

**B. Ludtke.** Ludtke's arguments mirror the district court's analysis. First, he argues there is no implied consent authority to require repetitive samples when the first sample requested was submitted and satisfactorily tested. Iowa Code sections 321J.6(2) and (3) clarify the use of the terms "specimens" and "test or tests" in section 321J.6(1). An officer determines which test to administer—breath, blood or urine. Iowa Code § 321J.6(2). The law allows a second test only under one circumstance—when the officer believes the suspect is under the influence of a drug other than alcohol. *See* Iowa Code § 321J.6(3). In that case, the test is of blood or urine. *Id.*

Ludtke also argues that there was no factual basis for the trooper to conclude that Ludtke did not blow long enough and no factual or legal basis for us to conclude that the second test was not only legally requested but is the only valid test.

## VI. Analysis.

 The IDOT correctly notes we have recognized that under certain circumstances, a police officer could lawfully request more than one test. *See State v. Nelson,* 394 N.W.2d 346, 348 (Iowa 1986). In *Nelson,* the arresting officer requested a blood test after a breath-testing machine

malfunctioned. *Id.* at 346. The driver consented. *Id.* The issue was whether the officer had a right to request the second test. We held that under the circumstances the officer had such right even though there was no express statutory authority for the second test. *Id.* at 348. In so holding we said: "[W]hile the express language of [the implied consent statute] does not authorize an officer to first request a breath test and then request a blood test, the purpose of the statute is fostered rather than thwarted by approval of the officer's request for a second test under these circumstances." *Id.* Later, the court reiterated, "we believe that it is a reasonable construction of [the implied consent statute] to allow a peace officer to make a second request of a suspect for a different bodily specimen, when the first test attempt is thwarted by an equipment malfunction." *Id.* We rejected the contention that the statutory language—"test or tests"—precluded an officer from administering more than one test. *Id.*

The issue in this case narrows to whether we should apply the *Nelson* ruling to a factual scenario in which the arrestee does not cooperate by not providing an adequate breath specimen. We agree with the IDOT that "it would be contrary to common sense to allow an arresting officer to administer a second test based on circumstances that were beyond the control of the licensee, but not allow the officer to request a second test when the licensee deliberately attempts to sabotage the process." In our view, by allowing a second test, we are furthering the purpose of the statute.

We reject Ludtke's assumption that an adequate breath sample is always obtained when the machine locks in and produces a hardcopy printout. In *Powell v. Cox,* the Utah Supreme Court addressed a similar issue and posed it this way:

The single issue raised therefore relates to the discretion an officer has in administering a chemical test. Specifically, the question is, can an officer reasonably require a defendant to do more than merely activate the green light of a breathalyzer, which indicates that he has furnished a given volume of air?

608 P.2d 239, 241 (Utah 1980). In *Powell,* the defendant refused to follow the officer's instructions, but did provide a sufficient quantity of air to activate the breathalyzer's green light. *Id.* at 240. The appellate court affirmed the trial court's finding that the defendant unreasonably refused to submit to a reasonable request by the officer for a more complete sample. *Id.* at 241.

The appellate court's reason for permitting an officer to take an additional sample "is because the result of the test is dependent *not upon the volume of the sample, but the quality.*" *Id.* (emphasis added). To support its conclusion, the court quoted with approval the following passage from a text on drunk driving:

A fresh mouth piece, or saliva trap, is then attached to the heated Sample Tube and the subject is instructed on how the sample is to be delivered. The subject should be told to blow as long as possible in order to be sure that the sample is from the deep lung area of the subject and thus an Alveolar air sample. Regardless of the amount of air blown into the machine, the vent system disposes of all but the last section of the predetermined sample chamber volume of 52.5 cc. If the subject does not, or cannot, produce a deep lung Alveolar air sample, and in reality only passes mouth air into the machine, then *a false reading will be obtained.* This reading *may be falsely high or low* depending upon the contents of residual hydrocarbon material present in the mouth of the subject at the time of the test.

*Id.* (quoting 2 Richard E. Erwin, *Defense of Drunk Driving Cases* § 22.02, at 22–15 (3d ed.1979)) (emphasis added).

The court then concluded:

It is therefore in the best interest of the state *as well as an arrested person* to obtain a deep lung sample. As long as the officer administering the test is not unreasonable in his request he has considerable discretion in obtaining a satisfactory sample.

*Id.* The court cautioned, however, that an officer could not obtain a second sample after an analysis had been done on the first sample merely because the officer was dissatisfied with the results. *Id.* at 241 n. 4.

█ We agree with this analysis and adopt the rule that when an officer reasonably believes that an arrestee is not cooperating to produce an adequate sample for testing, the officer may lawfully request a second sample. We think our implied consent statute should be interpreted in a way "to make its application practicable and to enable an officer to deal realistically with arrested drivers who may be uncooperative." *Id.* at 241 (citation omitted). Like the Utah court, however, we caution that an officer cannot lawfully request a second sample merely because the officer is dissatisfied with the results of the first test. The evidence must support an officer's reasonable belief that the arrestee did not cooperate. Otherwise, the intrusion would be unreasonable as condemned by the Supreme Court in *Schmerber. See Schmerber,* 384 U.S. at 772, 86 S.Ct. at 1836, 16 L.Ed.2d at 920.

Here, the trooper testified that sometimes a subject puffs lightly into the machine for ten seconds, and the machine locks in and accepts that as a satisfactory test. The trooper further testified that he

attributed the difference in the test results to the fact that the second test was the result of deep lung air and the first test was not. To support his conclusion, the trooper testified that on the first attempt (1) Ludtke did not comply with his instructions to blow as long and hard as he could into the machine and (2) he took the tube out of his mouth before he was through blowing as long and hard as he could. The disparity in the test results bore out and gave credence to the trooper's testimony. Additional support for the trooper's testimony is found in the results of the PBT, which indicated an alcohol concentration of .13, as compared to the second breath test, which indicated an alcohol concentration of .120. In short, there was substantial evidence to support the agency's finding that the trooper had adequate reason to request a second breath test.

Ludtke had the burden of proving by a preponderance of the evidence that he had complied with the implied consent law and that the officer had not satisfied the procedural requirements of that law. *See Mary v. Iowa Dep't of Transp.*, 382 N.W.2d 128, 132 (Iowa 1986). Under the record before us, we conclude Ludtke failed to meet his burden of proof.

### VII. Disposition.

We conclude the trooper's second request for a breath test was lawful. Accordingly, we reverse the district court's contrary ruling. We remand for an order affirming the agency's decision reinstating revocation of Ludtke's driver's license.

**REVERSED AND REMANDED WITH DIRECTIONS.**