# IN THE SUPREME COURT OF IOWA

No. 13–0869

Filed March 14, 2014

**TERESA KAREN BEARINGER,**

Appellant,

vs.

**IOWA DEPARTMENT OF TRANSPORTATION,
MOTOR VEHICLE DIVISION,**

Appellee.

___

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

Petitioner appeals district court ruling affirming license revocation and rejecting prescription-drug defense in administrative proceeding. **REVERSED AND REMANDED WITH INSTRUCTIONS.**

Aaron D. Hamrock of McCarthy & Hamrock P.C., West Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Michelle R. Linkvis, Assistant Attorney General, for appellee.

**WATERMAN, Justice.**

This appeal requires us to decide whether the prescription-drug defense to the criminal charge of operating a motor vehicle while under the influence, *see* Iowa Code § 321J.2(11) (2011), applies in administrative license revocation proceedings under Iowa Code sections 321J.12 through .13. Teresa K. Bearinger drove her car off the road and destroyed a brick mailbox. At the request of the investigating police officer, Bearinger gave a urine sample that tested positive for controlled substances—her prescription medications. Based on these test results, the Iowa Department of Transportation (IDOT) revoked her license for 180 days. She contested her revocation. An administrative law judge found the facts to establish the prescription-drug defense, but concluded the defense did not apply in the administrative proceeding. The district court affirmed. We retained her appeal. For the reasons explained below, we hold the prescription-drug defense is available in license revocation proceedings. We therefore reverse her revocation.

### I. Scope of Review.

"Iowa Code chapter 17A governs review of license revocation decisions under Iowa Code chapter 321J." *Ludtke v. Iowa Dep't of Transp.*, 646 N.W.2d 62, 64 (Iowa 2002); *see also* Iowa Code § 321J.14. "The district court acts in an appellate capacity to correct errors of law on the part of an agency . . . ." *Ludtke*, 646 N.W.2d at 64. "On appeal, we apply the standards of chapter 17A to determine whether the conclusions we reach are the same as those of the district court." *Welch v. Iowa Dep't of Transp.*, 801 N.W.2d 590, 594 (Iowa 2011). We are bound by an agency's factual findings if those findings are supported by " 'substantial evidence in the record made before the agency when the record is viewed as a whole.' " *Ludtke,* 646 N.W.2d at 65 (quoting Iowa

Code § 17A.19(8)(*f*) (1999)). "Evidence is substantial when a reasonable person could accept it as adequate to reach the same findings." *Id.* "Because this is not an area where interpretation of the law has been clearly vested in the discretion of the agency, we need not give deference to the IDOT's interpretation . . . and are free to substitute our judgment de novo for the agency's interpretation." *Welch*, 801 N.W.2d at 594.

## II. Background Facts and Proceedings.

On May 12, 2011, Teresa Bearinger was driving her car two blocks from her home in Urbandale, Iowa, while eating a nutritional power bar. She dropped the bar under her seat and reached down to find it, becoming distracted. She missed a curve, drove off the road, and collided with a brick mailbox. Her car continued into a yard, narrowly missing a large tree before veering back onto the road. The Urbandale police officer who responded to the accident, Shawn Popp, noted "the car was basically disabled due to the tire being torn off" and Bearinger "exploded the mailbox." Officer Popp found Bearinger outside her car, upset, shaking, and unsteady on her feet. Officer Popp noted that she was shaking "way beyond what . . . we normally would see in something like this."

Bearinger told Officer Popp she was taking neurological prescription medications and showed him a list of her medications. She explained to Officer Popp that she hadn't eaten much the previous day or that morning and that she thought one of her medications was clouding her mind. Officer Popp noted her eyes were watery. In light of all this, Officer Popp believed Bearinger may have been impaired. He asked Bearinger to go to the police department with him and she complied. At the station, Bearinger agreed to take a breath test and provide a urine

sample. The breath test indicated she had no alcohol in her system, but the urine test revealed the presence of prescription medications.

As a result, on March 6, 2012, IDOT revoked Bearinger's license for 180 days. Bearinger appealed the revocation to an administrative law judge (ALJ). Bearinger asserted she was not in violation of Iowa Code section 321J.2 (2011) because the prescription-drug defense under Iowa Code section 321J.2(11) applies. IDOT argued for revocation, asserting the prescription-drug defense applies only to a criminal charge and is unavailable in license revocation proceedings.

At the administrative hearing, Bearinger's physician, Lynn Struck, testified she had prescribed Bearinger the medications detected in Bearinger's urine. Dr. Struck testified she had not prohibited Bearinger from driving while taking the medications, though she had warned the medications may cause drowsiness. Bearinger testified she took her medications as instructed for a month preceding the accident and felt her ability to drive was not impaired.

Officer Popp also testified, recounting his interaction with Bearinger the day of the accident. He testified that Bearinger told him, "If she didn't like the effects of the one [medication], she would grab another one and take it instead." Officer Popp suggested Bearinger may have been self-medicating.

The ALJ believed Bearinger's testimony, concluding "Bearinger took her prescribed medication as prescribed." The ALJ therefore found, "based on the evidence presented in this proceeding, . . . the elements of the statutory prescription-drug defense were established." But, agreeing with IDOT's statutory interpretation, the ALJ determined the prescription-drug defense does not apply in administrative license revocation proceedings and denied Bearinger's appeal. The IDOT

reviewing officer and the district court affirmed. Bearinger appealed the district court's ruling, and we retained the appeal to answer this question of statutory interpretation.

### III. Analysis.

Iowa Code section 321J.2 criminalizes operating a motor vehicle while under the influence of alcohol or drugs. "The main purpose of chapter 321J is to promote public safety by removing dangerous drivers from the highways." *State v. Vogel*, 548 N.W.2d 584, 587 (Iowa 1996). We discussed the reach of chapter 321J.2 in *State v. Comried*, 693 N.W.2d 773, 775–78 (Iowa 2005). In *Comried*, we noted that the legislature amended section 321J.2 in 1998 to create a per se ban on driving with any amount of a controlled substance in the body— regardless of whether a person is "under the influence" of that controlled substance. *Id.* at 775–76, 78. The prescription-drug defense was already included in chapter 321J.2. *See* 1986 Iowa Acts ch. 1220, § 2(6) (codified at Iowa Code § 321J.2(6) (1987)) (creating chapter 321J, which included the prescription-drug defense). In its current form, section 321J.2(1) imposes criminal liability for driving:

> (*a*) While under the influence of an alcoholic beverage or other drug or a combination of such substances.
> (*b*) While having an alcohol concentration of .08 or more.
> (*c*) *While any amount of a controlled substance is present in the person, as measured in the person's blood or urine.*

Iowa Code § 321J.2(1)(*a*)–(*c*) (2011) (emphasis added). Section 321J.2(1)(*c*) criminalizes driving with *any* amount of a controlled substance in one's system. *See Comried*, 693 N.W.2d at 778 ("We conclude that the statute in question is clear and unambiguous and that 'any amount' means any amount greater than zero."). As we noted in

*Comried,* the "any amount" provision avoids proof problems in determining the level of a controlled substance in the driver's blood or urine and whether the drug impaired the ability to drive. *Id.* at 776. Many prescription drugs, however, are controlled substances. *See Houck v. Iowa Bd. of Pharmacy Exam'rs,* 752 N.W.2d 14, 19 (Iowa 2008) (discussing overlapping categories of drugs that are both controlled substances and require a prescription); *see also* Iowa Code § 124.101(5) (defining "controlled substance"); Iowa Code § 155A.3(37) (defining "prescription drug"). Thus, without the prescription-drug defense, it would be illegal to drive after taking one of the prescription drugs defined as a controlled substance if *any* amount of that drug is detectable in the driver's blood or urine.

Subsection 11 of section 321J.2 codifies the prescription-drug defense to the criminal charge:

> 11. *a.* This section does not apply to a person operating a motor vehicle while under the influence of a drug if the substance was prescribed for the person and was taken under the prescription and in accordance with the directions of a medical practitioner . . . or if the substance was dispensed by a pharmacist without a prescription pursuant to the rules of the board of pharmacy, if there is no evidence of the consumption of alcohol and the medical practitioner or pharmacist had not directed the person to refrain from operating a motor vehicle.
>
> *b.* When charged with a violation of subsection 1, paragraph "*c*", a person may assert, as an affirmative defense, that the controlled substance present in the person's blood or urine was prescribed or dispensed for the person and was taken in accordance with the directions of a practitioner and the labeling directions of the pharmacy . . . .

Iowa Code § 321J.2(11).

The parties agree that section 321J.2(1)(*c*) is not violated when the prescription-drug defense is established. *See State v. Schories,* 827 N.W.2d 659, 665–68 (Iowa 2013) (vacating conviction based on evidence

establishing prescription-drug defense). IDOT nevertheless asserts the prescription-drug defense is inapplicable in administrative proceedings to revoke a driver's license. We did not decide that issue in *Schories* and confront it here as a question of first impression.

In *Comried,* we summarized the interpretive principles most relevant to construing chapter 321J:[1]

> "When we interpret a statute, we attempt to give effect to the general assembly's intent in enacting the law. Generally, this intent is gleaned from the language of the statute. To ascertain the meaning of the statutory language, we consider the context of the provision at issue and strive to interpret it in a manner consistent with the statute as an integrated whole. Similarly, we interpret a statute consistently with other statutes concerning the same or a related subject. Finally, statutes are interpreted in a manner to avoid absurd results and to avoid rendering any part of the enactment superfluous."

693 N.W.2d at 775 (quoting *State v. Pickett*, 671 N.W.2d 866, 870 (Iowa 2003)). We also construe chapter 321J "liberally or reasonably" to protect the public by reducing "the hazard of prohibited operation of a motor vehicle to a minimum." *Id.* (quoting 61A C.J.S. *Motor Vehicles* § 1385, at 274 (2002)). We apply these principles to decide this case.

We look first to the statutory provisions governing license revocation proceedings and read them together with the criminal statutes incorporated by reference. Iowa Code section 321J.12(1) empowers IDOT to revoke a person's license for operating while intoxicated. That statute states:

---

[1]IDOT argues on appeal that we should give deference to its interpretation of section 321J.12. Chapter 321J, however, does not give IDOT interpretive authority. *See Welch*, 801 N.W.2d at 594. We declined to give deference to IDOT's interpretation of sections 321J.6 and 321J.9 in *Welch*, and we decline to do so here. *See id.* at 602 (holding "a motorist's request to take the chemical test need not be honored after he or she has previously refused that test following a valid implied consent advisory").

> Upon certification, subject to penalty for perjury, by the peace officer that there existed reasonable grounds to believe that the person had been operating a motor vehicle in violation of section 321J.2, that there existed one or more of the necessary conditions for chemical testing described in section 321J.6, subsection 1, and that the person submitted to chemical testing *and the test results indicated the presence of a controlled substance or other drug, or an alcohol concentration equal to or in excess of the level prohibited by section 321J.2, or a combination of alcohol and another drug in violation of section 321J.2, the department shall revoke the person's driver's license or nonresident operating privilege* . . . .

Iowa Code § 321J.12(1) (emphasis added). IDOT revoked Bearinger's license based on the first ground: she drove after taking "a controlled substance or other drug."

Bearinger argues the references to section 321J.2 in the revocation statute obligate IDOT to consider her prescription-drug defense codified in section 321J.2(11).[2] IDOT counters that—unlike the second and third grounds for revocation in section 321J.12(1)—the first ground does not refer to a violation of section 321J.2. IDOT thus contends that the prescription-drug defense in section 321J.2(11) is unavailable to avoid a license revocation on the first ground. IDOT argues it is reasonable for the legislature to treat license revocation differently than criminal prosecution because license revocation is remedial, rather than punitive. *See Vogel*, 548 N.W.2d at 587.

---

[2]Bearinger notes the first sentence of Iowa Code section 321J.12(1) requires the officer to certify "there existed reasonable grounds to believe that the person had been operating a motor vehicle in violation of section 321J.2." Bearinger argues that a valid prescription-drug defense would defeat this threshold requirement for revocation. We disagree. The officer's certification helps ensure the driver is statutorily obligated to submit to the chemical testing or face the administrative consequences of a test refusal. The certification requirement must be read together with the other requirements for revocation. The prescription-drug defense comes into play only after a positive test result for a prescription drug. The defense cannot be used to retroactively determine the officer lacked grounds to ask the driver to submit to testing.

If we read section 321J.12(1) in isolation, IDOT's interpretation would be persuasive. "Under the doctrine of last preceding antecedent, qualifying words and phrases refer only to the immediately preceding antecedent . . . ." *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Shell Oil Co.*, 606 N.W.2d 376, 380 (Iowa 2000); *see also Oberbillig v. W. Grand Towers Condo. Ass'n*, 807 N.W.2d 143, 151 (Iowa 2011) (explaining doctrine of the last preceding antecedent). We note no comma separates the phrase in section 321J.12(1) incorporating section 321J.2 in either the second or third grounds. This suggests that each time section 321J.2 is mentioned, it modifies only that ground. *See Shell Oil Co.*, 606 N.W.2d at 380. Otherwise, section 321J.2 would not be mentioned twice—in both the second and third grounds—but not in the first. That the legislature expressly modified the second and third grounds by requiring a violation of section 321J.2, but omitted that reference in the first ground, suggests that a license may be revoked under the first ground without a violation of section 321J.2. *See Oyens Feed & Supply, Inc. v. Primebank*, 808 N.W.2d 186, 193–94 (Iowa 2011) (relying on the fact "the legislature selectively incorporated [a] prefatory clause" into one subsection but not another to hold clause did not apply to both subsections).

But, we must read section 321J.12(1) together with section 321J.13(2), which sets forth the grounds for appealing a license revocation. Section 321J.13(2) states that the review hearing "shall be limited to the issues of":

> whether a peace officer had reasonable grounds to believe that the person was operating a motor vehicle in violation of section 321J.2 or 321J.2A and one or more of the following:
>
> *a.* Whether the person refused to submit to the test or tests.

*b.* Whether a test was administered and the test results indicated an alcohol concentration equal to or in excess of the level prohibited under section 321J.2 or 321J.2A.

*c.* Whether a test was administered and the test results indicated the presence of alcohol, a controlled substance or other drug, or a combination of alcohol and another drug, *in violation of section 321J.2.*

Iowa Code § 321J.13(2) (emphasis added).

When a comma separates a qualifying phrase from the antecedent, the qualifying phrase generally applies to all antecedents. *Shell Oil Co.,* 606 N.W.2d at 380. Section 321J.13(2)(*c*) thus directed the ALJ to review whether Bearinger's test results indicated the presence of a controlled substance or other drug *in violation of section 321J.2.* By definition, there can be no violation of section 321J.2 if the prescription-drug defense is established. And, without a violation of section 321J.2, a person appealing IDOT's revocation decision is entitled to prevail.

Another principle of interpretation supports Bearinger. IDOT's interpretation would render superfluous the language in section 321J.13(2)(*c*) stating that a violation of section 321J.2 is necessary for a revocation to occur. We are to interpret chapter 321J " 'in a manner to avoid . . . rendering any part of the enactment superfluous.' " *Comried,* 693 N.W.2d at 775 (quoting *State v. Pickett,* 671 N.W.2d 866, 870 (Iowa 2003)); *see also Star Equip., Ltd. v. State,* ___ N.W.2d ___, ___ (Iowa 2014) ("[W]e do not interpret statutes so they contain surplusage." (Internal quotation marks omitted.)). Reading sections 321J.2, 321J.12, and 321J.13 together, we conclude the prescription-drug defense applies to administrative revocation proceedings.

Our conclusion is reinforced by yet another principle of interpretation: we are to interpret chapter 321J " 'in a manner to avoid absurd results.' " *Comried,* 693 N.W.2d at 775 (quoting *Pickett,* 671

N.W.2d at 870).[3]  The purpose of the license revocation procedure "is to promote public safety by removing dangerous drivers from the highways."  *Vogel*, 548 N.W.2d at 587.  Under IDOT's interpretation, a driver could have her license revoked for testing positive for a prescription drug[4] that has no impact on driving ability. Examples of such prescription drugs include Lipitor, used to control cholesterol, as well as the antibiotic Amoxicillin, or Prilosec, an antacid.  It would be absurd to deny such drivers the prescription-drug defense in revocation proceedings.  We do not believe the legislature intended to allow the prescription-drug defense to a criminal charge of operating a motor vehicle while under the influence, yet withhold the defense to an administrative license revocation.

The prescription-drug defense is available only to those who have taken their medications in compliance with a doctor's instructions, without any alcohol.  *See* Iowa Code § 321J.2(11)(*a*).  Thus, the defense is unavailable to those who abuse their prescription medications and those who drive against their doctor's orders.  *See id.*; *Schories*, 827

---

[3]The absurd-results doctrine should be used cautiously.  *See Anderson v. State*, 801 N.W.2d 1, 7 (Iowa 2011).

"In view of our obligation to ascertain the intent of the legislature,

> we are mindful of the cautionary advice of one commentator that 'the absurd results doctrine should be used sparingly because it entails the risk that the judiciary will displace legislative policy on the basis of speculation that the legislature could not have meant what it unmistakably said."

*Id.* (quoting *Sherwin–Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 427 (Iowa 2010)).

[4]Section 321J.2(1)(*c*) imposes criminal liability for any amount of a controlled substance.  The revocation provision is broader: Iowa Code section 321J.12(1) provides for revocation if "the test results indicated the presence of a controlled substance *or other drug*." (Emphasis added.)  Thus, revocation may be triggered by a trace amount of a drug that is not a "controlled substance."  "Drug" is broadly defined, and includes prescription drugs.  *See* Iowa Code § 155A.3(13) (drug), (37) (prescription drug).

N.W.2d at 665 (evaluating whether substantial evidence existed to prove driver was abusing his prescription medication); *see also* Tina Wescott Cafaro, *Slipping Through the Cracks: Why Can't We Stop Drugged Driving?*, 32 W. New Eng. L. Rev. 33, 54–60 (2010) (discussing whether states should prohibit driving under the influence of prescription drugs and reviewing various state formulations of the prescription-drug defense). The fact finder must determine the defense has been established.

It was Bearinger's burden to establish by a preponderance of the evidence that her prescription-drug defense applies. *See Ludtke*, 646 N.W.2d at 69 (noting petitioner has burden in IDOT administrative proceedings to prove license should not be revoked); *McCrea v. Iowa Dep't of Transp.*, 336 N.W.2d 427, 428–29 (Iowa 1983) (same).[5] The ALJ found Bearinger satisfied the elements of the prescription-drug defense. IDOT does not contend the evidence supporting the defense is insubstantial. We conclude the testimony of Bearinger and Dr. Struck constitutes substantial evidence to support the ALJ's finding, which therefore is binding on appeal. *See* Iowa Code § 17A.19(10)(*f*). Accordingly, Bearinger is entitled to a reversal of IDOT's revocation decision.

---

[5]For the burden in criminal proceedings, see *Schories*, 827 N.W.2d at 665 ("Once a defendant has presented evidence sufficient to show the prescription drug defense applies, the State has the burden of disproving each element of the defense beyond a reasonable doubt.").

**IV.  Disposition.**

For the foregoing reasons, we reverse the district court's ruling that affirmed IDOT's revocation of Bearinger's license.  We remand this case for the district court to enter an order reversing her revocation.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**