# IN THE COURT OF APPEALS OF IOWA

No. 14-1540
Filed July 9, 2015

**YEMPABOU PALO,**
        Petitioner-Appellee,

**vs.**

**IOWA BOARD OF REGENTS,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Story County, Steven J. Oeth, Judge.


        The Board of Regents appeals the district court's decision reversing a final decision of the Board.  **APPEAL DISMISSED.**


        Thomas J. Miller, Attorney General, Jeffrey S. Thompson, Solicitor General, and Diane M. Stahle, Special Assistant Attorney General, for appellant.

        Matthew M. Boles and Adam C. Witosky of Parrish, Kruidenier, Dunn, Boles, Gribble, Gentry, Brown & Bergmann, L.L.P., Des Moines, for appellee.

        Joseph M. Barron of Peddicord, Wharton, Spencer, Hook, Barron, & Wegman, L.L.P, West Des Moines, for amicus curiae.


        Heard by Tabor, P.J., McDonald, J., and Mahan S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MAHAN, S.J.**

The Board of Regents (the Board) appeals the district court's decision reversing a final decision of the Board finding Iowa State University (ISU) student, Yempabou Palo, had violated section 4.2.5 of the ISU Student Disciplinary Regulations. The Board claims its decision was based on substantial evidence and was not irrational, illogical, or wholly unjustifiable. We find the Board's claims in the present action are moot because Palo has since graduated from ISU, and a decision in this case does not fit any of the exceptions to the mootness doctrine. Therefore, we dismiss this appeal.

## I.    BACKGROUND FACTS AND PROCEEDINGS

On September 10, 2012, the Iowa State University Office of Judicial Affairs charged Palo with violating two provisions of the ISU Student Disciplinary Regulations: section 4.2.5 (prohibiting sexual misconduct, sexual assault, and sexual harassment) and section 4.2.27 (prohibiting violations of local, state, or federal law). The charges stemmed from a report by a female ISU student, H.B, of unwelcome sexual encounters with Palo and Spencer Cruise (who was not an ISU student) on May 18, 2012. As a result of the incident, Palo was criminally charged with sexual abuse in the second degree. After an investigation, the Story County Attorney dropped the criminal charge on January 14, 2013.[1] As a result, the section 4.2.27 charge was also dropped .

---

[1] Following the dismissal of Palo's criminal charges, ISU reinstated Palo to the basketball team. He went on to play seventeen games for ISU to finish the 2012-13 season. In June 2013, after taking into account Palo's situation and compliance with the Student Disciplinary Regulations, ISU renewed his athletic scholarship. Following

Palo exercised his option to have the disciplinary case heard by an administrative law judge (ALJ), appointed through the Department of Inspections and Appeals, rather than by the All University Judiciary at ISU. The ISU Office of Judicial Affairs prosecuted the case, and H.B. also participated in the hearing. The hearing was held on April 24 and 25, 2013. The ALJ issued his decision on May 22, and found the charge against Palo was unfounded.

In June the Office of Judicial Affairs and H.B. separately appealed to ISU President Steven Leath. In its appeal, the Office of Judicial Affairs took exception to some of the ALJ's factual findings and also claimed the ALJ improperly applied ISU's sexual misconduct policy. Neither party made a request for additional evidence or for an oral argument. President Leath considered the case upon the record developed before the ALJ, and issued a decision on August 30. He adopted the majority of the fact findings made by the ALJ, took exception to three of the ALJ's findings, and made additional findings and credibility determinations. President Leath relied upon the consent standard established in the Student Disciplinary Regulations and found Palo had violated the disciplinary regulation prohibiting sexual misconduct. Given Palo's academic success at ISU, President Leath declined to suspend Palo, but imposed the following sanctions: 1) indefinite deferred suspension, 2) prohibition from participating in or representing ISU in intercollegiate athletics, 3) required participation in sexual assault and harassment awareness training, and 4) participation in alcohol awareness training.

---

President Leath's decision in August 2013, Palo was suspended from the basketball team.

4

On September 6, 2013, Palo appealed the President's decision to the Board of Regents. He also requested the Board to issue a stay on his prohibition on participation in intercollegiate athletics. The Board affirmed and wholly adopted the President's decision on December 5. The Board also denied Palo's request for a stay.

On December 10, Palo petitioned for judicial review of the Board's decision. He also sought a stay of the sanctions imposed by the Board's decision. On January 16, 2014, the district court issued a ruling granting Palo's stay on a temporary basis. In its ruling, the district court noted President Leath issued his decision five days after the deadline that would have allowed Palo to transfer to a different school to take advantage of his remaining year of athletic eligibility. The court found "irreparable injury" would occur if Palo was not allowed to return to the team for his final year of eligibility. The court also found, since H.B. had graduated and left the State of Iowa, granting the stay would not interfere with ISU's ability to protect H.B.

The district court issued its ruling on Palo's petition for judicial review on August 21, 2014. The court found there was not substantial evidence to support the Board's conclusion Palo violated the sexual misconduct policy. The Board now appeals.

## II.  SCOPE AND STANDARD OF REVIEW

Our standard of review for judicial review of an agency action is governed by Iowa Code chapter 17A (2013). *Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 888 (Iowa 2014). The district court acts in an appellate capacity when it reviews the agency's decisions. *Watson v. Iowa Dep't of Transp. Motor Vehicle Div.*, 829

N.W.2d 566, 568 (Iowa 2013). "On appeal, we apply the standards of chapter 17A to determine whether we reach the same conclusions as the district court. If we reach the same conclusions, we affirm; otherwise we may reverse." *Id.*

Courts are required to give "appropriate deference" to the findings of an agency when discretion is "vested by a provision of law." Iowa Code § 17A.19. Agencies vested with the power to make findings of facts are vested with the power to apply the law to those facts. *Mycogen Seeds v .Sands*, 686 N.W.2d 457, 465 (Iowa 2004). Our review of final agency action is "severely circumscribed." *See Greenwood Manor v. Iowa Dep't of Pub. Health*, 641 N.W.2d 823, 839 (Iowa 2002); *Sellers v. Emp't Appeal Bd.*, 531 N.W.2d 645, 646 (Iowa Ct. App. 1995). Nearly all disputes are won or lost at the agency level; the cardinal rule of administrative law is that judgment calls are within the province of the administrative tribunal, not the courts. *See id.*

To disturb the agency's findings of fact, those findings must not be supported by substantial evidence in the record. Iowa Code § 17A.19(10)(f); *Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 255–57 (Iowa 2012). Substantial evidence is a "quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue." Iowa Code § 17A.19(10)(f)(1). Evidence may be substantial even if it would have supported a contrary inference or an inconsistent conclusion. *Ludtke* v. *Dep't of Transp.*, 646 N.W.2d 62, 66 (Iowa 2002).

To disturb the agency's application of law to fact, the applications must be irrational, illogical, or wholly unjustifiable. Iowa Code § 17A.19(10)(m); *Burton*, 813 N.W.2d at 256. Those terms should be read with their plain language

meaning. *The Sherwin-Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 432 (Iowa 2010). The review of the agency's application of law to fact is with "some degree of discretion . . . but not the breadth of discretion given to the findings of fact." *Meyer v. IBP, Inc.*, 710 N.W.2d 213, 219 (Iowa 2006).

There is error at law if the Board did not have a "quantity and quality of evidence that would be deemed sufficient by a neutral . . . person, to establish the fact at issue." Iowa Code § 17A.19(10)(f)(1). There is error at law if the Board applied the law to the facts in a way that was "based upon an irrational, illogical, or wholly unjustifiable application of law to fact." *Id.* § 17A.19(10)(m). We thoroughly examine the record on which the Board based its decision to determine if there was substantial evidence. *Wal-Mart Stores, Inc.*, 657 N.W.2d at 499. If those findings of fact are binding, we use them to examine the Board's application of law to fact. We give appropriate deference to the Board when they have vested authority to apply fact to the law. *Mycogen Seeds*, 686 N.W.2d at 466.

## III. MOOTNESS

A principle of judicial restraint is that courts do not decide issues when the underlying controversy is moot. *Rhiner v. State*, 703 N.W.2d 174, 176 (Iowa 2005). "For this reason, a court will generally decline to hear a case when, because of changed circumstances, the court's decision will no longer matter." *Homan v. Branstad*, No. 14-0178, ___ N.W.2d ___, at *12 (Iowa May 29, 2015). "A live dispute must ordinarily exist before a court will engage in an interpretation of the law." *Lalla v. Gilroy*, 369 N.W.2d 431, 434 (Iowa 1985). "A case is moot if it no longer presents a justiciable controversy because the issues involved are

academic or nonexistent." *Iowa Bankers Ass'n v. Iowa Credit Union Dep't*, 335 N.W.2d 439, 442 (Iowa 1983). Nevertheless, we have the discretion to decide a moot issue on appeal under certain circumstances. *Grinnell Coll. v. Osborn*, 751 N.W.2d 396, 399 (Iowa 2008). In making this determination, we consider four factors: "(1) the private or public nature of the issue, (2) the desirability of an authoritative adjudication to guide public officials in their future conduct, (3) the likelihood of the recurrence of the issue, and (4) the likelihood the issue will recur yet evade appellate review." *Id.*

Here, in late 2013, the Board found Palo had violated Regulation 4.2.5 (Sexual Misconduct, Sexual Assault, and Sexual Harassment) and provided the following sanctions: indefinite deferred suspension from Iowa State if Palo was found in violation of the student code of conduct or other law, prohibition from participating in or representing Iowa State in intercollegiate athletics, participation in sexual assault and harassment awareness training, and participation in alcohol awareness training. In January 2014, the district court issued a stay on Palo's prohibition from playing basketball for Iowa State. Palo was a fifth-year senior at this time and was set to graduate following the spring 2014 term. Palo's eligibility to participate in intercollegiate athletics expired at the end of the 2014 basketball season. The district court issued its ruling on Palo's petition for judicial review in August 2014, and overturned the sanctions imposed by ISU against Palo.

On appeal, the Board asks us to overturn the district court's ruling and affirm its decision. However, the circumstances surrounding the underlying controversy have changed since the Board issued its opinion. The Board issued multiple sanctions against Palo, but the only sanctions with long-term

implications were the prohibition on playing for the ISU basketball team and the deferred suspension from ISU. The basketball prohibition was stayed by the district court, and Palo was allowed to return to the ISU basketball team for his final season of eligibility. Additionally, the Board could not point us to any place in the record showing that deferred suspension would remain a justiciable issue after Palo's scheduled graduation date  Therefore, since our decision in this controversy would "no longer matter" and be "merely academic," we find this issue to be moot and decline to reach the merits of this case. We also decline to find that an exception to the mootness doctrine applies in this case.

## IV.  CONCLUSION

We find that this action is moot, and dismiss the appeal.

**APPEAL DISMISSED.**