# IN THE COURT OF APPEALS OF IOWA

No. 18-0759
Filed June 19, 2019

**WILLIE CARROLL,**
 Plaintiff-Appellant/Cross-Appellee,

**vs.**

**IOWA DEPARTMENT OF HUMAN SERVICES,**
 Defendant-Appellee/Cross-Appellant.
_____

 Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan,

Judge.


 Willie Carroll appeals, and the Iowa Department of Human Services cross-

appeals, a district court ruling on Carroll's petition for judicial review partially

affirming an agency determination and remanding the matter to the agency.

**AFFIRMED ON APPEAL; REVERSED AND REMANDED ON CROSS-APPEAL.**


 Judith R. Böes, Sarah K. Franklin, and Abhay M. Nadipuram of Davis,

Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellant.

 Thomas J. Miller, Attorney General, and Lisa Reel Schmidt, Assistant

Attorney General, for appellee.


 Considered by Doyle, P.J., Mullins, J., and Mahan, S.J.*

 *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**MULLINS, Judge.**

Willie Carroll appeals, and the Iowa Department of Human Services (DHS) cross-appeals, a district court ruling on Carroll's petition for judicial review partially affirming an agency determination and remanding the matter to the agency.

Carroll argues the district court erred in affirming the denial of four out of five of the skilled-nursing visits she requested to be covered by her managed-care organization because (1) the court failed "to consider whether the requested skilled nursing visits qualify as 'restorative and maintenance home health agency services'" under Iowa Administrative Code rule 441-78.9, (2) DHS abused its discretion in using arbitrary criteria in denying the request, (3) the court erred in failing to find DHS's decision's negative impact on private rights is grossly disproportionate to the public interest, and (4) the factual determinations that skilled-nursing visits were not medically necessary are unsupported by substantial evidence.[1]

On cross-appeal, DHS contends the district court erred in remanding the matter to the agency for the purpose of determining whether one of the five requested skilled-nursing visits was medically necessary. Specifically, DHS argues the agency determination that all five requested visits were not medically necessary is supported by substantial evidence.

---

[1] Carroll also vaguely argues the determination was "unreasonable, arbitrary and constitutes an abuse of discretion." *See* Iowa Code § 17A.19(10)(n) (2017). Because the substance of the argument only concerns the sufficiency of evidence to support a determination of fact, *see id.* § 17A.19(10)(f), we limit our analysis to that argument.

**I.      Background Facts and Proceedings**

Carroll is a Medicaid recipient.  She has been diagnosed with type-2 diabetes and suffers from other medical conditions.  She has previously utilized in-home, skilled-nursing services.  There is evidence that Carroll's diabetes has been poorly managed in the past, and Carroll has been forgetful about checking her blood-sugar levels at times.  To remedy this situation, Carroll utilizes a telehealth service that calls to remind her to check and record her blood sugar.  These figures are then relayed to Carroll's physician.

On January 9, 2017, Carroll's home-health provider, Iowa Home Care (IHC), submitted to Amerigroup, a managed-care organization, a request for prior authorization for Carroll to receive nine in-home, skilled-nursing visits between January 30 and March 30, 2017.  Accompanying the request was a plan of care contemplating specific skilled-nursing services and a sixty-day summary dated November 28, 2016.  The summary noted that in the past sixty days, Carroll had not suffered any falls, injuries, or hospitalizations; she properly managed all of her medications on her own; she attended all of her medical appointments; she was able to "perform all personal cares"; her blood sugar was consistent; she performed foot care on her own; and she experienced no issues relative to esophageal obstruction, diverticulitis, anxiety, or hypertension.  Amerigroup denied the request, determining the requested skilled-nursing services were not medically necessary.  This determination was not appealed.

On February 2, IHC submitted to Amerigroup a second request for prior authorization for Carroll to receive five skilled-nursing visits during the same period.  This request included an addendum stating Carroll "requires monitoring

for diabetic management, testing and diet compliance with education. 1 visit for recertification is included in the total of 5 visits requested." The plan of care requested that a skilled nurse "observe and assess" Carroll, perform specific tasks, and provide her with education.[2] The request also included a care plan visit

---

[2] The plan of care specifically provided the following directives:

Skilled Nurse to observe and assess:

(1) Cardiopulmonary status–Assess lung sounds, heart sounds, cough, use of accessory muscles, complaints of dyspnea or SOB, peripheral pulses, or presence of edema, medication changes and medication effectiveness.

(2) Diabetic management, testing and documentation, diet compliance.

(3) Gastrointestinal function and discomfort–Assess for abdominal pain, presence of bowel sounds, constipation, diarrhea, nausea, or vomiting. difficulty swallowing.

(4) Medication adherence, client currently manages own medication, nurse to ask client if she is taking all prescribed medications properly.

([5]) Monitor for falls or injuries.

([6]) Foot assessment–Assess for trophic changes, open areas or s/s of infection

([7]) Increase in anxiety: Chest pain, difficulty breathing, racing thoughts.

([8]) Divarticulitis: pain/discomfort, diet

Skilled Nurse Tasks:

(1) Diabetic Foot Care to be performed by client per her request. States she will perform as needed and nurse to assess feet with each visit. . . . Trophic changes patient displays are: absent hair growth, thickening of toenails, yellowing of nails, skin and skin color changes and browning shiny skin. . . .

(2) Skilled nurse to send [physician] progress report with weekly nursing visit of patient's blood sugar log that week. Client to check blood sugar BID.

(3) Vital signs at every visit.

. . . .

Skilled Nurse to teach PRN knowledge deficit:

(1) General home safety and fall prevention to include reporting all falls to skilled nurse/ physician

(2) Diabetic management including, diet (consistent meal intake-no bedtime snacks), monitoring blood sugars, and daily inspection of feet for lesions.

(3) Teach all new and changed medications.

(4) Hypertension and S/S to report to skilled nurse/physician

(5) Anxiety disorder: reporting any change or worsening to skilled nurse/physician

summary review report, dated January 26, 2017. The report noted Carroll was "alert and oriented x3" and she generally was not experiencing any physical or medical issues; the authoring nurse noted she had "no concerns" for Carroll's condition. On February 10, following a physician review, Amerigroup denied the request, again concluding the requested services were not medically necessary.

In March, Carroll and IHC filed an internal appeal with Amerigroup.[3] An external review was conducted by Dr. Lawrence Koss, who determined the denial was appropriate, concluding the "requested skilled nursing visits are not medically necessary." Specifically, Koss concluded the requested services could be safely performed by Carroll or other non-skilled person with proper training, and it was

---

(6) Diverticular disease to include reporting of any gastric distress to skilled nurse/physician.

[3] Carroll submitted additional documentation with her appeal, including a sixty-day summary dated January 26, 2017 and care plan visit summary review reports for November 28, December 12, and December 26, 2016; and January 9 and February 6, 2017.

The November 28 summary provided Carroll was experiencing some back and hip pain but she was otherwise stable and managing her medications as directed.

The December 12 summary stated Carroll was not experiencing any foot problems, vertigo, shortness of breath, edema, skin breakdown, falls or injuries, or chest pain. Carroll did experience chest tightness on one occasion a week prior and some abdominal cramping. Carroll's fourteen-day average blood-sugar level was 185.

The December 26 summary noted Carroll had stable vitals; no chest pains, "diabetic reactions," or foot pain; some abdominal cramping; ongoing anxiety and depression without exacerbation; three headaches in the past week; and a fourteen-day average blood-sugar level of 193.

The January 9 summary noted Carroll was not experiencing chest pains, vertigo, edema, shortness of breath, skin breakdown, foot problems, falls, or injuries. Carroll did report experiencing some nausea, one headache in the past week, and "depression with personal matters." Carroll had a fourteen-day average blood-sugar level of 231.

The January 26 sixty-day summary did not note any serious concerns. It provided Carroll was "alert and oriented x3," not homebound, and compliant with her medication regimen.

The February 6 summary noted an elevated blood pressure due to stress, three headaches in the past week, and an increase in anxiety. Carroll denied chest pains but reported chest tightness in relation to a stress episode. Carroll was not experiencing any shortness of breath, foot problems, or edema. Her blood-sugar level was 162.

not medically necessary that they be performed by a nurse. Amerigroup informed Carroll and IHC it would be upholding its denial of coverage and the decision was final.

In April, Carroll and IHC filed an appeal and request for hearing with DHS. Prior to hearing, Carroll submitted additional documentation.[4] In light of the additional documentation, Amerigroup submitted the matter to a second external reviewer, Dr. Sohail Saeed, who likewise concluded the requested services were not medically necessary. Specifically, Saeed determined the requested services did not require the utilization of a skilled nurse. A hearing was held in May, after which an administrative law judge (ALJ) entered a proposed decision affirming Amerigroup's denial of coverage, also concluding the requested services were not medically necessary. Carroll filed a request for review with DHS. Following a review, the director of DHS adopted the ALJ's proposed decision as the final decision.

In July, Carroll filed a petition for judicial review in the district court. She amended her petition in August. Following a hearing, the district court affirmed the denial of four out of the five requested visits. The court remanded the matter to the agency to consider whether the skilled-nursing visit Carroll received on February 21 was medically necessary. As noted, both parties appeal.

---

[4] One of the documents noted Carroll visited Iowa Diabetes and Endocrinology Center on January 28, 2016, roughly one year before her request for prior authorization, upon referral relative to her "poor" diabetes. Another of the documents concerned Carroll's visit to the emergency room on February 21, 2017, after Amerigroup's initial denial. On that day, Carroll's nurse visited her home and noted Carroll's blood pressure to be elevated. The nurse called Carroll's primary-care physician, who directed the nurse to call an ambulance. By the time she arrived at the hospital, Carroll had no complaints. She was sent home with a course of medication for a urinary tract infection.

## II. Standard of Review

"Judicial review of agency decisions is governed by Iowa Code section 17A.19." *Brakke v. Iowa Dep't of Nat. Res.*, 897 N.W.2d 522, 530 (Iowa 2017) (quoting *Kay-Decker v. Iowa State Bd. of Tax Review*, 857 N.W.2d 216, 222 (Iowa 2014)); *accord Warren Props. v. Stewart*, 864 N.W.2d 307, 311 (Iowa 2015). The district court acts in an appellate capacity in judicial-review proceedings. *Iowa Med. Soc'y v. Iowa Bd. of Nursing*, 831 N.W.2d 826, 838 (Iowa 2013) (quoting *City of Sioux City v. GME, Ltd.*, 584 N.W.2d 322, 324 (Iowa 1998)). On appeal, this court "appl[ies] the standards of section 17A.19(10) to determine if we reach the same results as the district court." *Brakke*, 897 N.W.2d at 530 (quoting *Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 10 (Iowa 2010)); *accord Des Moines Area Transit Auth. v. Young*, 867 N.W.2d 839, 842 (Iowa 2015). Relief in a judicial-review proceeding is appropriate only "if the agency action prejudiced the substantial rights of the petitioner and if the agency action falls within one of the criteria listed in section 17A.19(10)(a) though (n)." *Brakke*, 897 N.W.2d at 530.

## III. Analysis

### A. Preservation of Error

First, Carroll argues the decisions of DHS and the district court are erroneous because they failed "to consider whether the requested skilled nursing visits qualify as 'restorative and maintenance home health agency services'" under Iowa Administrative Code rule 441-78.9. She acknowledges "the district court failed to address why [she] is not entitled to restorative and maintenance care." Because Carroll concedes the court "failed to address this issue," DHS argues Carroll failed to preserve error on the issue of restorative and maintenance care.

In her reply brief, Carroll maintains error was preserved because the district court "explicitly raised the issue of restorative and maintenance home health agency services" and "acknowledged that such services constitute skilled nursing services." We disagree with Carroll that the district court ruled on the issue she now asks us to address on appeal. The district court only passively mentioned restorative and maintenance care, noting, aside from payment for skilled-nursing services, "payment may *also* be made for" restorative and maintenance home health agency services. *See* Iowa Admin. Code r. 441-78.9.

"It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). "When a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal." *Id.* Here, the district court did not rule on the issue of restorative and maintenance care. Thereafter, Carroll did not move under Iowa Rule of Civil Procedure 1.904(2) for a ruling on the issue. Error has not been preserved, and we will not decide the issue for the first time on appeal.

Next, Carroll argues DHS abused its discretion in using arbitrary criteria in denying the request for skilled-nursing visits and the district court's partial affirmation of the decision is therefore error. Again, Carroll concedes "the district court did not even address" this issue. Nor did Carroll move for a ruling on the issue prior to filing her notice of appeal. Consequently, we agree with the State that error has not been preserved. *See id.*

Finally, Carroll argues the court erred in failing to find DHS's decision's negative impact on private rights is grossly disproportionate to the public interest. Again, as the State points out, the district court did not rule on this argument below, and the claim has therefore not been preserved for our review. *See id.*

B. Sufficiency of the Evidence

We turn to Carroll's argument that the determination that four out of the five skilled-nursing visits were not medically necessary is unsupported by substantial evidence and DHS's argument that the agency determination that all five visits were not medically necessary is supported by substantial evidence. Our review of an agency decision varies depending on the type of error allegedly committed. *See Jacobson Transp. Co. v. Harris*, 778 N.W.2d 192, 196 (Iowa 2010). Where, as here, the alleged "error is one of fact, we must determine if the [agency's] findings are supported by substantial evidence." *Id.*; *see* Iowa Code § 17A.19(10)(f). This court is not entitled to reweigh the evidence in a substantial-evidence review—we only determine whether substantial evidence supports the agency finding. *Arndt v. City of Le Claire*, 728 N.W.2d 389, 394–95 (Iowa 2007). "'Substantial evidence' means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue. . . ." Iowa Code § 17A.19(10)(f)(1). "Evidence is substantial when a reasonable person could accept it as adequate to reach the same findings." *Bearinger v. Iowa Dep't of Transp.*, 844 N.W.2d 104, 106 (2014) (quoting *Ludtke v. Iowa Dep't of Transp.*, 646 N.W.2d 62, 65 (Iowa 2002)). "If the agency's findings are supported by substantial evidence, those findings are binding upon us." *Fed.*

*Express Corp. v. Mason City Human Rights Comm'n*, 852 N.W.2d 509, 510–11 (Iowa Ct. App. 2014).

The requested skilled-nursing visits amount to a home health agency service. *See* Iowa Admin. Code r. 441-78.9(3). Payment is required "for *medically necessary* home health agency services prescribed by a physician in a plan of home health care provided by a Medicare-certified home health agency." *Id.* r. 441-78.9 (emphasis added). The only dispute in this case is whether the visits were "medically necessary." "Skilled nursing services shall be evaluated based on the complexity of the service and the condition of the patient." *Id.* r. 441-78.9(3). The regulation concerning skilled-nursing services does not define the term "medical necessity," but it does note skilled-nursing services are those that "require a licensed registered nurse or licensed practical nurse to perform" and do not include services that "can be safely performed by the member or other nonskilled person who has received the proper training or instruction or" situations where "there is no one else to perform the service." *Id.* The Code of Federal Regulations notes, in order "to be considered a skilled service, the service must be so inherently complex that it can be safely and effectively performed only by, or under the supervision of, professional or technical personnel." 42 C.F.R. § 409.32(1).

In affirming the denial of four out of the five requested visits, the district court reasoned:

> Here, while [Carroll's physician] indicated that skilled nursing visits were necessary the record does not bear this out. As noted by the agency Ms. Carroll for the most part was able to manage her disease processes. While her diabetes was noted as poorly controlled the manner in which it was to be controlled or monitored for control was by providing [her physician] or his staff her blood sugar reading. It appears from the record that Ms. Carroll took the

blood sugar readings routinely and reported them to the IHC nurse when the nurse visited. There was no indication that Ms. Carroll could not have provided those readings to [her physician's] office on a daily or weekly basis. The fluctuation in her blood sugar levels were not deemed to be as a result of improper medication or a failure to take her medication. It appeared that it was the result of not being compliant with her diet. To correct this problem a skilled nurse could only reassert the importance of following her diet regimen. That could have been provided by [the physician's] staff when the blood sugar levels were reported. There was no indication in the record that her other disease processes caused her problems during the time period in dispute. Accordingly, the court finds that there was substantial evidence in the record to support the denials for the[se] skilled nursing visits . . . .

Upon our review of the record, we agree with the district court that the evidence was sufficient to allow "a reasonable person [to] accept it as adequate to reach" a conclusion the requested visits were not medically necessary. *See Bearinger,* 844 N.W.2d at 106 (quoting *Ludtke*, 646 N.W.2d at 65). We therefore affirm the district court as to those visits.

We turn to whether the record included substantial evidence that the February 21, 2017 skilled-nursing visit was not medically necessary. On this date, Carroll's nurse visited her home and noted Carroll's blood pressure to be elevated. The nurse called Carroll's doctor, who directed the nurse to call an ambulance. By the time she arrived at the Hospital, Carroll had no complaints. She was sent home, although she was provided medication for a urinary tract infection. On this point, the district court concluded, "There was nothing in the record that suggested Ms. Carroll was able to or was monitoring her blood pressure" at this time and "[i]t is unclear from the record whether the monitoring of blood pressure was something Ms. Carroll could do or was instructed in how to perform or whether she had adequate equipment at home to monitor that condition." The court therefore

remanded the matter to the agency to determine if "Carroll had the ability to monitor her blood pressure or whether that was a condition that could only be done by a skilled nurse or licensed practical nurse." The State argues "assessing symptoms of hypertension is not a service that is so complex that it can only be delivered by a skilled nurse." We are inclined to agree. Skilled-nursing services do not include services that "can be safely performed by the member or other nonskilled person who has received the proper training or instruction." Iowa Admin. Code. r. 441-78.9(3). Monitoring blood pressure is clearly such a service and an in-home visit from a nurse to assess the same is simply not medically necessary. Although we agree with the district court that the record is unclear as to whether Carroll was able to monitor her blood pressure or had sufficient equipment to do so, the record shows Carroll was not homebound and therefore refutes any suggestion that it was medically necessary that blood-pressure monitoring take place in her home. She could have gone to her physician or elsewhere for such an assessment. In any event, our duty is to "broadly and liberally apply" the agency's finding to uphold rather than defeat the agency decision; although the evidence could support a different conclusion, the controlling question is "whether the evidence supports the finding actually made." *Taylor v. Iowa Dep't of Human Servs.*, 870 N.W.2d 262, 266 (Iowa Ct. App. 2015) (quoting *IBP, Inc. v. Al Gharib*, 604 N.W.2d 621, 632 (Iowa 2000)). After a careful review of the evidence, we answer that question in the affirmative and conclude the agency determination is supported by substantial evidence.

**IV.   Conclusion**

Carroll has failed to preserve error on her claims concerning restorative and maintenance care, the criteria used by Amerigroup and DHS in denying the request for prior authorization, and gross disproportionality.  We find the agency determination affirming the denial of all five requested skilled-nursing visits is supported by substantial evidence.  We therefore affirm on appeal.  On cross-appeal, we reverse the district court's remand of the matter to the agency, and we remand the matter to the district court for the entry of an order affirming the agency determination.

**AFFIRMED ON APPEAL; REVERSED AND REMANDED ON CROSS-APPEAL.**